## AUZENE v. GULF PUBLIC SERVICE CO., Inc.

### No. 1978.

Court of Appeal of Louisiana. First Circuit.

May 4, 1939.

Rehearing Denied June 6, 1939.

Writ of Error Denied June 26, 1939.

Frank T. Doyle, of New Orleans, and Lewis & Lewis, of Opelousas, for appellant.

John F. Dubuisson, of Opelousas, for appellee.

DORE, Judge.

The plaintiff alleged that on December 28, 1936, he purchased a bottle of Coca-Cola, through his agent, from a saloon owned and operated by Milburn Guillory in the City of Opelousas, and that as he attempted to open the said bottle of Coca-Cola with a standard bottle opener it exploded with a great noise and with such force that his left hand by which he was holding the bottle was severely cut by fragments of broken glass and by the jagged edges of the remaining part of the bottle. He alleged further that the Coca-Cola was purchased by the dealer, Guillory, from the defendant and that it had not been opened or tampered with or improperly handled from the time it left the possession of the defendant until the time of the attempted opening of the same by the petitioner, and that under the doctrine of res ipsa loquitur the explosion must be charged to the negligence of the defendant in careless bottling, manufacturing and handling of said bottle.

An exception of no cause or right of action was filed by the defendant based (1) on the ground that there was no privity of contract between plaintiff and defendant, and (2) on the ground that the doctrine of res ipsa loquitur was not applicable in this case. The trial court properly rejected the first ground, but sustained the exception on the second ground because the exact point involved did not appear to have been passed upon by our appellate courts, and because the highest courts of other States appear divided on the question.

On appeal by plaintiff on the exception of no cause of action, we reversed the judgment of the lower court and remanded the case for trial on its merits, holding in effect that if the plaintiff could prove his allegation that the Coca-Cola had not been opened or tampered with or improperly handled from the time it left the possession of the defendant until the time that plaintiff attempted to open it, and that at that time it exploded to plaintiff's injury through no negligence on his part, a prima facie case would thereupon be established on his behalf, and it would then become incumbent, under the doctrine of res ipsa loquitur, upon the defendant to rebut the presumption that the explosion of the bottle arose from some defect in its manufacture and preparation. A detailed discussion of the legal question involved, together with our reasons for our decision and citations in support thereof, appear in 181 So. 54, and need not be repeated herein.

On the trial of the case on remand, the lower court found from the evidence that the bottle exploded and injured the plaintiff while he was making a proper attempt to open it, and that the bottle was not handled or used by any one after it left the possession of the defendant in such manner as to cause it to explode, and further that the defendant had failed to meet the burden placed upon it to show that the defect which caused the explosion did not result from improper preparation and manufacture. He found that as a result of the injury the plaintiff suffered loss of income in the sum of $100, pain, suffering and injury in the amount of $500, and medical expense in the amount of $42.50, and accordingly rendered judgment in favor of the plaintiff and against the defendant in the sum of $642.50. The defendant has appealed.

On this appeal there are presented to us (1) the question whether or not the trial judge manifestly erred in his interpretation of the evidence in determining the facts on which his judgment is based,

and (2) the question whether or not he committed error in the admission of certain evidence.

█ Reviewing the evidence, we find first that the explosion of the Coca-Cola bottle and the resultant injury to plaintiff are well established. The plaintiff, a barber, testifies that he sent Simon Simien, a customer, to Milburn Guillory's saloon (less than two blocks distant from his shop) for the main purpose of obtaining change for a five dollar bill handed him by another customer, Jerry Landry, to pay for a hair cut, and incidentally to buy a bottle of Coca-Cola and two cigars; that Simien returned within five or ten minutes with the Coca-Cola and cigars, and a moment later plaintiff attempted to open the Coca-Cola bottle with a standard opener, which he had been using for some ten years, and just as he hooked the opener to the cap of the bottle he heard, first a sizzling noise, and almost immediately the explosion which sounded like a gun shot; that the force of the explosion caused the glass from the bottle to make a jagged cut across his left hand, with which he held the bottle, from the index finger to the thumb, causing profuse bleeding and pain and forcing him to secure medical attention. He testifies further that he did not shake or handle the bottle roughly, and that there was no unusual condition in his shop which could have caused the explosion. His testimony is corroborated by the two customers, eye witnesses to the explosion and injury, as well as by Dr. Bienvenu, who attended his injury shortly after the explosion and who testified that the plaintiff stated to him that the injury was caused by the explosion of a bottle of Coca-Cola in his hand. Counsel for defendant objected to the latter testimony, but it was properly admitted by the trial judge as part of the res gestae.

█ It is admitted that the Coca-Cola bottle in question was sold by the defendant to Milburn Guillory's saloon. With reference to the handling of the bottle subsequent to delivery to Guillory's saloon, we agree with the trial judge that the evidence shows, quoting the lower court: "the dealer, from whom the bottle was purchased, and his helpers were not guilty of any negligence in the handling of the bottle. The bottle was refrigerated in an ice box furnished to the dealer by the defendant itself; and * * * the method of handling the bottle was just about as carefully carried on as the manufacturer could hope or expect would be given to its bottles in the character of equipment which it furnished to the dealer for the purpose." It is true that Milburn Guillory and his employees handled the bottle in a rather careless manner; that is, put them down in the ice box in an indiscriminate and rather rough manner, but it does not appear from the evidence that this handling of the bottles caused them to crack or caused their resisting power to become weakened, and the evidence is that there were no cracks or breaks in the bottle which plaintiff attempted to open.

We are convinced also that the district court did not err in holding that there was no negligence on the part of plaintiff's agent in carrying the bottle from the dealer to the plaintiff, and, like the trial judge, we cannot agree with the opinion of one of defendant's witnesses that the explosion was caused by a defective opener.

Now, on the question of proof by the defendant to show its freedom from fault or negligence in the preparation and manufacture of the bottle of Coca-Cola, we have the testimony of R. A. Phillips, defendant's plant superintendent, and H. J. Blanchet, superintendent of the bottling works in charge of sales and distribution.

Mr. Phillips testifies that Coca-Cola has a higher carbonation than other bottled drinks and consequently heavier bottles are used for Coca-Cola; that these bottles are obtained from a reputable manufacturer with the understanding that they can withstand 500 to 600 pounds of gas pressure, whereas Coca-Cola has an average pressure of 40 pounds. There is no satisfactory proof, however, of the actual pressure resistance of these bottles. It is noted that in testing, before the trial judge, the gas pressure of a hot bottle of Coca-Cola violently agitated, Mr. Phillips used the precaution of wrapping the bottle in heavy canvas. His caution in making this test, which shows that the highest pressure attained was 58 pounds, is a strong indication that he does not know the actual gas pressure resistance of these containers, nor has he confidence that it is nearly as high as he states the manufacturer claims. He also testifies with reference to the thorough inspection that all bottles received before, during and after being filled, and with reference to the careful process used in filling them and in checking the amount of gas with which they are charg-

ed. His testimony is convincing to show that the process used is carefully adhered to, but not to show that there is no room for error in the process itself. The precautions taken, such as the hourly inspections to determine gas content, indicate to us that there is a great possibility—and we might say probability—of a bottle becoming too highly charged with carbonated gas. The fact that different charges of gas are placed in each bottle indicates that there can be an over-charge in any one bottle, and it is not satisfactorily shown that this could always be detected by the methods used.

Mr. Blanchet corroborates Mr. Phillips' testimony with reference to the careful process used in the manufacture and bottling of the drink, and the systematic inspections at the plant, and then testifies with reference to the distribution of the product, setting forth, in effect, that careful and systematic methods are used in the crating, warehousing and transportation of the bottled Coca-Colas. He stresses the point that defective openers are dangerous, in that they often cut into the lip of the bottle, causing breakage, and that it is his policy to distribute wherever needed modern · standard openers; that he never heard of a bottle opened with a standard opener exploding. He maintains that the opener used by the plaintiff was antiquated and in his opinion was the cause of the explosion on which this suit is based.

Both Mr. Phillips and Mr. Blanchet admit that they have heard of bottles of carbonated drinks exploding under certain conditions, such as caused by contact between bottles, rough handling, dropping, sudden change in temperature, especially from warm to cold; but never by gas pressure in the Coca-Cola. Mr. Phillips contends in effect that a cold bottle of Coca-Cola, such as the one involved in this case, could not possibly explode if properly handled, since cooling reduces the gas pressure. He states that it is his opinion that the bottle involved herein exploded due to some other cause than gas pressure, not attributable to the defendant, but is not specific like his fellow official, who blames the explosion on the allegedly defective opener used by plaintiff.

■■ Both of these officials maintained that where Coca-Cola was handled in the same careful manner as by the defendant company (although admitting that neither their dealers nor the general public were apprised of that fact), it could not and would not explode. Thereupon, counsel for plaintiff sought to introduce evidence to the effect that other explosions of defendant's bottled Coca-Colas had occurred in the community under various conditions and circumstances. He was met with the objection that such evidence was not admissible for the reasons: (1) That evidence of other explosions involving different parties remote in point of time to the accident is irrelevant and immaterial; (2) that such evidence constitutes res inter alias acta; and (3) that such evidence seeks to enlarge the pleadings.

It is our opinion that such evidence was admissible and that the trial judge correctly overruled the objection. The defendant by its testimony sought to show that it was free of negligence in this case because of a careful and systematic process used by it in the manufacture and handling of its product, and because of the fact that no other complaint had ever been made of similar occurrences. Certainly, the plaintiff had the right to introduce evidence to show that this set process had been defective in other instances.

The law is properly stated in Corpus Juris, verbo Negligence, Section 808 as follows:

"The admissibility of evidence of the existence of similar defects or the occurrence of other accidents or injuries of a similar nature or similarly caused depends upon the purpose for which the evidence is offered and upon whether the nature of the negligence which is claimed to have caused the accident or injury in question is such that proof of other accidents or defects will tend to throw light upon the issue."

In Winfree v. Coca-Cola Bottling Works of Lebanon, 19 Tenn.App. 144, 83 S.W.2d 903, a case involving a similar question, the court held that evidence of other explosions should have been admitted.

■ The evidence objected to and properly admitted, consisting of the testimony of various persons in the City of Opelousas, none of whom appears to have any personal interest in this case or to be prejudiced, to the effect that defendant's Coca-Cola has exploded under varied conditions and circumstances, convinces us further that the trial judge did not err in hold-

ing that the defendant failed to exculpate itself from the inference of negligence.

■ With reference to the measure of damages, it appears that the only item that is capable of exact calculation is the medical expense of $42.50. The loss of income is naturally speculative to some extent but is capable of estimation. That is true also with reference to the element of pain and suffering and injury. We feel that the trial judge's estimate of loss of income in the amount of $100 and of the element of pain and suffering and injury in the amount of $500 is reasonable, and will not therefore disturb it.

For these reasons, we cannot say that the lower court has manifestly erred in his determination of the facts, nor that he has erred in the admission of evidence to which objection was made. The judgment is therefore affirmed.