Plaintiff sues for damages in the sum of $5,275 which she claims to have suffered as a result of the explosion of a bottle of coca cola which she took from the ice box in her store to serve a customer. She alleges that the coca cola was purchased from the defendant company and the bottle of coca cola had not been opened or tampered with, or improperly handled, from the time it left the possession of the defendant company to the time of the explosion; that the sole cause of the explosion of the bottle was the negligent, careless and improper bottling and manufacture of said coca cola; that the defendant company is in a better position to know the particular defects in the bottling and manufacture of said bottle of coca cola than plaintiff, and for that reason the doctrine of res ipsa loquitur is invoked.
It is alleged that fragments of broken glass from the bottle struck plaintiff on her face, lips and arms, causing severe lacerations and scars. Her alleged damages are made up of physical pain and suffering, mental pain and suffering, deformity and disability, nervous shock, loss of time and medical expenses. The defendant denied practically all of the allegations of the petition, and as a kind of alternative plea, alleges that if there was an explosion of the bottle of coca cola, it had been in possession of plaintiff and under her control for more than twelve hours, and if it did explode, the explosion was caused from improper handling by her or someone operating the store while the bottle was in the ice box; that plaintiff did not preserve the bottle but cast it aside and has failed to produce it for defendant's examination and inspection. It is further alleged that all bottles of coca cola manufactured by the defendant company are filled with utmost care with regard to gas pressure and the bottle alleged to have exploded was not overcharged.
The trial court rendered judgment for the plaintiff in the sum of $750. The defendant has appealed, and the plaintiff has answered the appeal, asking for an increase in the award.
The following facts are proved with legal certainty: that plaintiff was in the act of taking the bottle of coca cola from an ice box furnished her by the defendant company and had pulled the bottle a few inches above the top of the water in the ice box when the bottle exploded (bursted or "busted" as some of the witnesses say), and fragments of glass from the bottle flew up and struck her in the face and on her right arm, causing a rather deep cut on her upper lip just below and to the right of her nose, and also causing a rather severe cut and laceration on her right arm; that the bottle of coca cola was purchased from the defendant company the day before the explosion and was not frozen or knocked against other bottles or the sides of the box as it was being pulled from the ice water just before the explosion occurred.
Under this finding of fact we think the trial judge was correct in applying the doctrine of res ipsa loquitur as was done in the case of Auzenne v. Gulf Public Service Co., La.App., 181 So. 54 and 188 So. 512. The plaintiff having proved that the bottle was not improperly handled after it left the possession of the defendant company, the presumption arises, that, if there were any defects in the bottle or if there was an overcharge of gas in the bottle, this fact would be more within the knowledge of the defendant than that of the plaintiff. With this proof, plaintiff made out a prima facie case of negligence against the defendant as it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or improper charging or mixture of the contents.
Learned counsel for defendant insist that the doctrine should not be applied in this case, or at least that it should not be applied to its fullest extent for the reason that the plaintiff failed to produce the bottle for examination by defendant, thus making it difficult for the defendant to ascertain the cause of the bursting of the bottle. We can readily understand how in some cases the defendant manufacturer might be considerably handicapped in meeting the burden shifted to it by the doctrine of res ipsa loquitur where one of its products is said to have caused injury by defect in its manufacture and where after injury, it is deprived of the opportunity of examining the article. The bottle in this case burst into fragments and we do not see where the defendant could have secured much information from an examination of these fragments to assist it in ascertaining the cause of the explosion. In any event, it is shown that plaintiff did not preserve the fragments of the broken bottle and of course could not produce them. There is no evidence or intimation *Page 219 
that she wilfully and purposely failed to preserve and produce the remains of the broken bottle and her case cannot be prejudiced by her failure to comply with the request of the defendant.
In finding that the defendant had failed to discharge the burden of proving that this bottle of coca cola had no defects and was properly bottled, the trial judge gave the following clear and convincing reasons for his finding on this point:
"Under our law, in the opinion of this Court, when the plaintiff has thus proved that the bottle of Coca Cola had not been opened or tampered with or improperly handled from the time it left the possession of the defendant company until the time it exploded in the hand of the plaintiff while she was in the act of lifting the bottle from the ice box to hand to a customer, through no negligence on her part, then a prima facie case has been established and the burden is then on the defendant company, under the doctrine of res ipsa loquitur, to rebut the presumption that the explosion arose from some defect or some negligence in its manufacture and preparation.
"On the question, therefore, of proof by the defendant company to show that it was free from fault or negligence in the manufacture and preparation of the bottle of Coca Cola, the defendant company must rely almost entirely upon the testimony of Mr. Kern, who was the manager of the defendant company's bottling plant at DeRidder. This witness testified that as manager of this plant it was his duty to supervise generally the manufacturing of its products; to make carbon dioxide tests of its beverages, etc. The witness testified that the carbon dioxide tests in their beverages are made through each day at intervals of 30 to 60 minutes; that it was their aim to keep the carbon dioxide pressure in their beverages at from 3.50 to 3.65. Just what the witness means by these figures is not clear. He says that the tests of the water are made frequently and upon finding the carbon dioxide too low the gauge at the carbonator is raised, and vice versa. He says they guide the water, that is to say, they cool the water to a certain temperature for the purpose of saturating the carbon dioxide gas into it; that the water has to be cold, 30 to 33, and that they bottle with water 30 to 35; but just what water the witness refers to in these cases is not clear. He says the carbon dioxide pressure in the bottle will vary to some extent with the temperature of the water, and which variations in pressure may be as much as five degrees.
"This Court is frank to say that the testimony of this witness is not clear on several points on which he testified, and is confusing in several respects, but we gather from a study of this testimony as a whole that the process used by this defendant company in the manufacture and preparation of their products is carefully adhered to, but this testimony, in the opinion of this Court, does not show that there may not be errors in the process itself. As we understand this testimony, different charges of carbon dioxide gas are placed in each bottle depending primarily upon the temperature of the water to be carbonated, and which tests are made at intervals of 30 to 60 minutes each day. At any rate the carbon dioxide pressure is not uniform. If this be true it might be entirely possible and even probable that an overcharge of gas is placed in any one bottle, and that this overcharge might not be detected by the method employed by the defendant company in its process of manufacturing its carbonated beverages."
The most serious injury suffered by the plaintiff was to her upper lip just below and slightly to the right of her nose at which point it appears a piece of glass from the bottle cut a gash in the flesh extending through the upper lip. This cut became infected and caused plaintiff's lip to swell and become so sore that it was difficult for her to eat anything other than liquid foods for several weeks. The injury undoubtedly caused considerable pain and somewhat affected her articulation, however, her present lisping and impediment of speech is due more to a congenital harelip than to any effects of the injury. The cut has left a scar on her lip from one-half to three-quarters of an inch in length extending obliquely across the lip, with a small nipple where the flesh did not properly unite, and a slight indentation in the area of the scar. This scar is well defined and can be seen for a distance of several feet.
Plaintiff also received a cut on her right arm which has completely healed but has left a scar just below her elbow about two inches in length and which can be seen a few feet away. There are no other permanent effects from the injury other than these two scars and the disfigurement and embarrassment they may cause. *Page 220 
Plaintiff claims to have been confined to her bed practically all the time for about three months and to have been treated by a doctor regularly during that time, and claims that she still experiences pain in eating and talking from the injury to her lip and continued to receive treatment from a doctor for more than six months after the injury. While we are convinced that plaintiff did suffer considerable pain and inconvenience from the injury, it is obvious that she has exaggerated the nature and extent of these injuries. We think the amount allowed by the trial judge is sufficient for physical and mental pain and suffering, and also for the disfigurement and embarrassment resulting therefrom. These are the only items of damage she has proved. There is no proof of any loss from partial or total disability, and the trial judge correctly sustained objections to proof of damage on account of medical expenses, as these items are due the community and cannot be recovered by the wife.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of the defendant in both courts.