FOURNET, Justice.
 

 This is a suit against the manufacturer of carbonated bottled beverages to recover damages for injuries sustained by the relators when a bottle of the manufactured product exploded, the proximate cause of the explosion allegedly being the negligence of the defendant company in placing excessive gas pressure in the bottle or in bottling the beverage in a defective bottle.
 

 After every possible defensive avenue had been exhausted in an effort to avoid liability, the case was remanded to the lower court by the Court of Appeal for the Second Circuit, to be there tried on the merits against Thomas H. Stanley and his wife, Mrs. Bonnie L. Stanley, the two persons who acquired all of the assets of the defendant corporation when it was dissolved shortly after the occurrence of the accident. See Ortego
 
 v. Nehi
 
 Bottling Works, 182 So. 365 and 369. In the lower court the Stanleys pleaded in defense of the action contributory negligence and their predecessor’s freedom from fault in that every modern, appliance available to that type of business was used to manufacture the bottled beverage in question. The case is now before us to review the final judgment of the .Court of Appeal for the Second
 
 *301
 
 Circuit reversing the lower court’s judgment in favor of relators.
 

 The record shows that the accident in question occurred on July 6, 1936. After placing a case of twenty-four bottles of carbonated beverages on the floor under the sandwich counter, a truck driver of the defendant corporation had just left the place of business operated by the relator Mrs. Olga S. Ortego and her husband, Edward W. Ortego, on the Alexandria-Baton Rouge Highway, where they dispensed and sold food and drinks. In addition to the case the driver had also left an additional bottle of beverage to replace one that had been broken, the extra bottle being placed by him in a horizontal manner between the necks of other of the bottles in the case, these other bottles standing upright in separate compartments or divisions of the case. After the driver had departed, Mrs. Ortego went to the counter and leaned down for the purpose of ascertaining whether or not the replacement had been made and also with the intention of placing some of the bottles on ice. Before she could touch the bottles, however, one of them, containing what is known as root beer, exploded, the flying glass cutting Mrs. Ortego’s right hand when she automatically and instantaneously threw it up in front of her face for protection. This cut was so severe that it not only bled profusely and required six stitches to close, but also incapacitated Mrs. Ortego for a period of approximately six weeks. For the pain and anguish suffered by her, as well as for the inconvenience and disfigurement, she asked 'that the sum of $500 be awarded her. Her husband joined in the suit as the' head and master of the community in order to recover the damages and expenses sustained by the community in the line of medical expenses and employment of extra labor by reason of the accident to and incapacity of the wife, this amount being estimated at $154.50. Relators relied on the doctrine of res ipsa loquitur for their recovery.
 

 It is the contention of the respondents that while there are some authorities holding the doctrine of res ipsa loquitur applies to cases involving the explosion of bottles and carbonated beverages, the weight of authority is to the contrary, citing numerous authorities in support thereof, among them the annotations and comments found in 4 A.L.R. at page 1094. Moreover, counsel for respondents argue that the doctrine >is not applicable in the instant case for the reason that the bottle exploded while under the control of the retailer or consumer.
 

 While it is true that in 4 A.L.R. 1094 it is declared that “The decided weight of authority is to the effect that the rule of Res ipsa loquitur is not applicable to the breaking, bursting, or exploding of a container in which a commodity ordinarily harmless is sold.” The cases of Wheeler v. Laurel Bottling Works, 111 Miss. 442, 71 So. 743, L.R.A.1916E, 1074; Dail v. Taylor, 151 N. C. 284, 66 S.E. 135, 28 L.R.A.,N.S., 949, followed in Cashwell v. Fayetteville Pepsi-Cola Bottling Works, 174 N.C. 324, 93 S.E. 901; and Glaser v. Seitz, 35 Misc. 341, 71 N.Y.S. 942, being cited in support of this statement. It is also true that this authority continues the discussion by stating that
 
 “*
 
 * * there is authority to the effect
 
 *302
 
 that the rule of Res ipsa loquitur is applicable to the explosion of a bottle in which an ordinarily harmless beverage is sold,” citing the case of Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087, 1088. In the Georgia case it was squarely held that in instances where there was either direct or circumstantial evidence that all of the persons through whose hands the bottled beverage passed after it left the manufacturer were free from fault, then a situation was presented in which the doctrine of res ipsa loquitur was applicable.
 

 Although the case of Payne v. Rome Coca-Cola Bottling Company, supra, was decided in 1912, some thirty years ago, it remains today one of the leading cases on this subject. In a subsequent annotation in 8 A.L.R., the author, commenting on the case at page 502, states: “This case cannot be said to be in conflict with the other cases cited in this note (these include the earlier cases discussed in the note in 4 A. L.R. at page 1094 and listed above), which have held that the
 
 mere explosion
 
 of a bottle does not present a case for the application of the doctrine of ‘res ipsa loquitur,’
 
 as in the latter cases there has not been the added evidence of freedom of fault on the part of all through whose hands the bottle passed' after it left the bottler.”
 
 (Italics and brackets ours.)
 

 In the Payne case the Georgia court reasoned that “since for every effect there is a cause, where negligence exists, some one must have been the responsible author. If he can be found, it is right that he should pay the penalty. The bottle exploded. Inferentially some one was negligent. It was not Cook, the last vendor of the bottle, nor the plaintiff’s brother, nor the plaintiff, nor yet Barnett, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault. But the inference of negligence remains, and some one is prima facie to blame. By a process of elimination we get back to the manufacturer, who set the dangerous agency in motion, and upon whom the blame ought inferentially to be fastened. It is certainly no hardship to require at the manufacturer’s hands an explanation of the occurrence, that the jury may say whether it, like the other persons who handled the bottle, has been exonerated. * * * It charged the bottle with carbonic acid gas, it put togeth- ■ er the constituent elements of the beverage, it manufactured or procured the bottle to hold these elements, and it put the bottle in circulation, with an invitation to the public to use the contents as a harmless and refreshing beverage.”
 

 This court has never had under' consideration a case involving injury resulting from the explosion of bottled carbonated beverages, but our attention has been called to the fact that the Court of Appeal for the-First Circuit has had occasion to pass upon similar questions in the cases of Auzenne v. Gulf Public Service Co., 181 So. 54 and Id., 188 So. 512, and Lanza v. De Ridder Coca Cola Bottling Co., 3 So.2d 217.
 

 In the Auzenne case the Court of Appeal based its decision on the authority of Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 500, 39 A.L.R. 1001. The Supreme Court of Missouri in deciding the Stolle case gave a thorough analysis of the many
 
 *303
 
 ■cases wherein the doctrine of res ipsa loquitur was invoked in cases dealing with the explosion of bottles containing carbonated beverages manufactured for sale but rested its conclusion on the reasoning in the Payne case. In the opinion it is said: ■“These bottled beverages, containing explosive gases, are put upon the market with the intention that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to the reasonable and ordinarily careful transportation and handling of these goods in the usual course of business.”
 

 In the later case (the De Ridder ■case) the appellate court [3 So.2d 218], reaffirming its decision in the Auzenne ■case, held:
 
 “With this proof
 
 [that the bottle was not improperly handled after it left the possession of the defendant company],
 
 plaintiff made out a prima facie ■case of negligence against the defendant as it must be assumed that a bottle •will not «explode when properly handled unless there is some defect in the bottle or improper ■charging or mixture of the contents
 
 (Italics and brackets ours.)
 

 A review of the authorities holding to the contrary, cited by counsel for defendants, discloses that they differ in the various jurisdictions throughout the country in the application of this maxim of res ipsa loquitur, some states holding that the rule will not be applied where a single bottle only has exploded; others holding that the rule will be applied and the case submitted to the jury where it is shown that several bottles manufactured by the same company have exploded; still others holding that after the bottle has left the bottling company, •the plaintiff must show affirmatively the proximate cause of the accident was due to the negligence of the manufacturer in order to recover.
 

 A thorough analysis of these various authorities, consideration being given to the facts in each case on which the decision of the court was primarily predicated, convinces us that the view adopted by the Court of Appeal for the First Circuit is not only the most sound, but also in accordance with the jurisprudence of this state on related subjects. As was very aptly said in the Stolle case, supra, the application of the doctrine of res ipsa loquitur to cases of exploding bottles “is fair to the manufacturer, and will afford the consumer of the beverage and those handling it in the ordinary course of trade reasonable protection, while the contrary rule leaves them practically without redress.”
 

 But counsel for the respondents in the case now before us argued here, both orally and in brief, that “in all probabilities, this accident was approximately due to the rough handling of the bottle by Mrs. Ortego, or, to an unavoidable accident,” since they overcame the prima facie case made out against them by the explosion of the bottle and the resulting injury to Mrs. Ortego by evidence establishing that their plant is modern and equipped with every
 
 *304
 
 standard appliance and machinery, including a gauge that keeps the gas pressure in the bottles well within the amount called for on charts furnished by the Nehi Bottling Company, and that in bottling their products they used bottles furnished by a reputable manufacturer, such bottles being guaranteed to withstand a pressure of 250 lbs. to the square inch, while a pressure of only 60 lbs. to the square inch was actually put into the bottles. In fact they are so strenuous in their arguments and the proof adduced to sustain the same that if it were not for the fact that the bottle in this case did actually explode without the touch of human hands, we would have no other recourse than to hold that the bottle did not in fact explode.
 

 The testimony offered on behalf of the respondents does show that the bottles used by them in their business -were purchased from a reputable manufacturer with a guarantee tq withstand the pressure stated above and that these bottles were inspected by agents and employees of the respondents in an effort to discover defects therein or any foreign substances that might have entered them. The testimony also shows that with the gas gauge above referred to it was almost impossible for any gas pressure in excess of that called for by the formula to enter the bottles, since the gauge used by the respondents released, by. a mechanical device known as a waste valve, any gas in excess of the amount called for on the charts of the Nehi Bottling Company.
 

 Despite all of this evidence, the fact remains that the bottle did explode. In addition to this it was - unmistakably shown that neither Mrs. Ortego nor any -other person touched the bottle from the time it left the hands of the manufacturer until it exploded. These were the conclusions and findings of the trial judge, in which the Court of Appeal for the Second Circuit' concurred. Moreover, from the testimony of the truck driver who delivered the bottled product to the relators, it appears that it'was not at all uncommon for bottles to explode or break for unaccountable reasons, much- of this breakage or explosion occurring while the bottled cases were in transportation and before they reached the retailers.
 

 It is impossible for the court to say with any degree of certainty exactly what caused the explosion of the bottle in this case. After reviewing all of the evidence before us, the only reasonable conclusion that we can arrive at is that the proximate cause of the explosion which resulted in injury to the relators was some fault on the part of the agents or employees of the respondents, in the preparation or handling of the bottled product.
 

 For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is annulled and set aside and the judgment of the lower court is affirmed, at respondents’ cost.
 

 O’NIELL, C. J., does not take part.