Plaintiff alleges in his petition that on August 23, 1943, he delivered to the Municipal Abattoir, operated by the City of Baton Rouge, two hogs weighing over 1200 pounds to be slaughtered, chilled and sent to the frozen locker; that the agents and employees of the abattoir slaughtered and dressed these hogs on the following day, and three days later the carcasses were inspected by the employees of the abattoir and sent to the Frozen Food Lockers for curing and were found to be spoiled to such an extent that the meat was rejected as being unfit for human consumption. Plaintiff alleges that the hogs were in good condition when they were delivered to the abattoir and were inspected and passed by the health officer at the abattoir. He alleges that he does not know what caused the meat to spoil, but that the hogs were in the care and control of the agents and employees of the City of Baton Rouge, and the spoilage must have been caused by negligent handling on the part of those who had charge of said animals.
The suit is to recover for the value of the hogs and the expense incurred amounting to the total sum of $191.50. The trial judge rendered a judgment in favor of plaintiff for the amount sued for, and the City has appealed.
The City denied any negligence on the part of the agents and employees of the abattoir in the handling of the animals. The plaintiff relies on the doctrine of res ipsa loquitur, and, while the City does not question the applicability of the doctrine to this case, it contends that it has shown that its agents and employees were free from negligence.
We undertook to explain and apply the doctrine of res ipsa loquitur in the case of Auzenne v. Gulf Public Service Co., 181 So. 54 and Auzene v. Gulf Public Service Co., 188 So. 512. In that case a bottle of Coca Cola exploded and injured a customer. We held that where the plaintiff shows that the accident could not have been caused by any act on his part or on the part of a third person other than the manufacturer, since the manufacturer was in a better position than plaintiff to know the condition of the product and any defects in its manufacture, it was incumbent on the manufacturer to show with reasonable certainty that the explosion of the bottle was not caused by any defect in its preparation and manufacture in order to rebut the prima facie case raised against the manufacturer by reason of the doctrine of res ipsa loquitur; that it was not incumbent on the manufacturer to exculpate itself from blame for causes attributable to handling by third persons. We followed the principles announced in that case in the later case of Lanza v. DeRidder Coca Cola Bottling Co.,3 So.2d 217, and approved the finding of the trial judge that the defendant had failed to rebut the prima facie presumption of negligence where the nature of the evidence offered to rebut the presumption was more or less of a negative nature, i. e., that the Coca Cola was bottled according to a formula and under approved methods, with the usual tests and supervision. The principles which we followed in these two cases were also followed and approved by the Supreme Court in the recent case of Ortego v. Nehi Bottling Works et al., 199 La. 599,6 So.2d 677.
[1] Applying these principles to the present case since the plaintiff has shown that his hogs were in good condition when they were delivered to the abattoir; that the abattoir had complete control of the slaughtering, cutting and cooling of the animals, and that the meat was spoiled three days after it was slaughtered and before it was delivered to the plaintiff, the presumption arises that the spoilage was due to some improper handling on the part *Page 707 
of the abattoir, and the burden rested on the City to exculpate its employees from any fault by a preponderance of the evidence and with reasonable certainty.
In an attempt to discharge the burden resting on it to show that its employees were free from negligence in handling the hogs, the City first called Dr. Miller, a veterinarian and the inspector at the abattoir, who testified that he inspected these two hogs before they were slaughtered, and after they were killed, cut open and the viscera removed, and the carcasses were again inspected, then tagged and placed in the cooling room which was kept at a temperature of not over 36 degrees Fahrenheit. After three days the meat was taken out and carried to the frozen lockers in another part of town where it was found to be sour and so spoiled that it was condemned. It is conceded by the doctor that the spoilage took place before the meat was removed from the cooling room at the abattoir.
The doctor could give no reason for the spoilage of the meat, but advanced two or three theories as to what might have been the cause. One of these was that the hogs had been fed on slop, his testimony being that if the stomach of the hogs was full of sour food the heat of the water in cleaning would heat the body enough to cause absorption through the tissues and souring. But this theory was rebutted when it was shown that one of the hogs had never been fed on slop and the other had not been given slop for a month or more, both having been fed on corn. Another theory advanced by the doctor was post vaccination infection; but it was shown that the hogs were vaccinated for cholera when they were pigs, two or three years ago. This fact eliminates this theory also. Another possible cause for the spoilage suggested was some disease in the animals, but it is conceded that they would not or at least should not have passed inspection if they were diseased.
Other causes for the spoilage of the meat are either suggested or suggest themselves. The two hogs were unusually large, and it is reasonable to assume that they had to be cut into smaller parts than merely splitting them down the middle to remove the entrails. It is also likely that these splits could have partly closed up, thus confining the warmth on the inside and preventing me cooling to penetrate thoroughly the meat on the inside. This possibility becomes more probable when it is noted that the decay in the meat was found inside. The opening made in the stomach to remove the entrails was not sufficient to keep the sides from flopping back together and partly closing up the opening, thus making it more difficult to chill the meat on the inside when the carcasses were hung up in the cooling room.
Then there was the possibility and the probability of the hogs being kept out in the open hot air too long after being slaughtered. As it was in August the weather was no doubt very warm, and large carcasses like these two hogs must have had an unusual amount of heat stored throughout their bodies. It is not shown that these factors were taken into consideration as they might have been on account of the size of the hogs and the nature of the weather. It is shown that some 37 hogs were handled by the abattoir in one day, but it is not shown that these other animals were as large as the two hogs in question.
In the case of Horrell et al. v. Gulf Valley Cotton Oil Co., Inc., 15 La. App. 603, 131 So. 709, the doctrine of res ipsa loquitur was applied to the explosion of a tank which killed a workman, and the defendant in attempting to exculpate itself from the prima facie case of negligence resulting from the application of the doctrine advanced three theories as to the possible cause of the explosion of the tank, any one of which causes, if true, was the result of negligence on the part of the defendant, and under this situation the court held that the defendant had failed to overcome the prima facie showing by a preponderance of the evidence.
[2, 3] Of course, as contended by counsel for the City, it was not incumbent on the City to show the specific cause of the spoilage of the meat, but the City was required to show that the spoilage did not result from any negligence or improper handling on the part of those in charge of the abattoir. We cannot say that the trial judge was in error in holding that the City failed to discharge the burden resting on it to show that its employees were free from negligence.
For the reasons assigned, the judgment appealed from is affirmed at the cost of defendant in both courts. *Page 708