135 So.2d 338 (1961)
Carlos BONURA et al., Plaintiff-Appellants,
v.
BARQ'S BEVERAGES OF BATON ROUGE, Defendants-Appellee.
No. 5411.
Court of Appeal of Louisiana, First Circuit.
November 20, 1961.
*339 Batson & Beychok, Baton Rouge, for appellant.
Seale, Hayes, Smith, Keogh & Franklin, Baton Rouge, for appellee.
Before ELLIS and HERGET JJ., and MILLER, J. pro tem.
ELLIS, Judge.
Plaintiff, Mrs. Bonura, has sued for damages allegedly suffered as a result of an explosion of a bottle of Barq's root beer *340 which she was preparing to remove from its paper carton and place in the ice box for cooling. The plaintiff, Carlos Bonura, husband of Sandra Bonura, co-plaintiff, has sued for medical expenses in the sum of $141, and estimated future costs for the continued care and treatment of his wife's injuries resulting from the explosion of the bottle in the sum of $500.
After trial on the merits, the District Court with oral reasons dismissed plaintiffs' suit, and both plaintiffs have appealed.
The petition of plaintiffs contains the usual allegations that the bottle had not been opened or tampered with in any manner by anyone after it was delivered to the plaintiffs, but that on July 25, 1959 Mrs. Bonura attempted to withdraw the bottle from the carton whereupon it exploded and numerous fragments of glass struck her in and about her face and chin; that the plaintiffs do not know and have no way of knowing what caused the bottle to explode as the bottle and its contents were in the same condition just prior to the explosion as they were when delivered to plaintiffs by the defendant's employee; that the explosion was due to the fault and negligence of defendant in bottling, delivering, handling and transporting of this soft drink; that the plaintiffs further plead the applicability of the doctrine of res ipsa loquitur against defendant.
The defendant has limited its defense in this court, as shown by statement in its brief as follows, and we quote:
"There is no doubt that the plaintiff in this case has proven that the occurrence of an accident resulted from an agency or instrumentality of which the defendant has had the custody, but plaintiff has failed to prove the one last remaining requisite which brings the doctrine of res ipsa loquitur into application and that is she failed to prove that the bottle was not improperly handled after it left the possession of the defendant company."
The law applicable to cases of this kind has been settled since the decision of this Court in Auzenne v. Gulf Public Service Co., La.App., 181 So. 54, 56, in which this Court stated:
"Our courts recognize the right of a plaintiff to invoke the doctrine of res ipsa loquitur where suit is brought against the manufacturer or dispenser of foods and beverages for damages resulting from the use and consumption of deleterious and unwholesome foods and beverages manufactured and dispensed for public use and consumption, for the reason that the manufacturer and dispenser are in a better position to know the condition of the product manufactured and sold than the consumer. In such a case the petition is good if it merely alleges negligence on the part of the manufacturer and dispenser in general terms. Costello v. Morrison Cafeteria Company, Inc., et al., 18 La.App. 40, 135 So. 245.

* * * * * *
"Plaintiff has made the affirmative allegation that the bottle had not been opened or tampered with, or improperly handled, from the time it left the possession of the defendant until the time of the attempted opening of the bottle by him. As already stated, it is not incumbent on defendant to refute or disprove this allegation, but it devolves on the plaintiff to prove it, and unless plaintiff does prove with legal and reasonable certainty that this bottle was not handled by some other person in such a way as to cause it to explode and further show that no other contributing cause could have intervened, the defendant cannot be required to affirmatively show that the explosion did not arise from a defect or vice in its manufacture. In other words, before plaintiff can shift to the door of defendant the necessity of an explanation for the cause of the bursting of the bottle under the res ipsa loquitur doctrine, plaintiff must present a situation by proper proof where the inference can be reasonably drawn that the cause of the explosion of *341 the bottle arose from some defect in its preparation and manufacture. We see nothing unfair or inequitable in this rule."
Also see Auzenne v. Gulf Public Service Co., La.App., 188 So. 512.
In the case of Lanza v. DeRidder Coca Cola Bottling Company, La.App., 3 So.2d 217, 218, this court reaffirmed its holding in the Gulf Public Service Company cases, supra, by again holding that:
"Under this finding of fact we think the trial judge was correct in applying the doctrine of res ipsa loquitur as was done in the case of Auzenne v. Gulf Public Service Co., La.App., 181 So. 54 and 188 So. 512. The plaintiff having proved that the bottle was not improperly handled after it left the possession of the defendant company, the presumption arises, that, if there were any defects in the bottle or if there was an overcharge of gas in the bottle, this fact would be more within the knowledge of the defendant than that of the plaintiff. With this proof, plaintiff made out a prima facie case of negligence against the defendant as it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or improper charging or mixture of the contents.

* * * * * *
"In finding that the defendant had failed to discharge the burden of proving that this bottle of coca cola had no defects and was properly bottled, the trial judge gave the following clear and convincing reasons for his finding on this point:
"`Under our law, in the opinion of this Court, when the plaintiff has thus proved that the bottle of Coca Cola had not been opened or tampered with or improperly handled from the time it left the possession of the defendant company until the time it exploded in the hand of the plaintiff while she was in the act of lifting the bottle from the ice box to hand to a customer, through no negligence on her part, then a prima facie case has been established and the burden is then on the defendant company, under the doctrine of res ipsa loquitur, to rebut the presumption that the explosion arose from some defect or some negligence in its manufacture and preparation."
The law applicable to cases of this kind as enunciated by this Court in the Auzenne v. Gulf Public Service Company cases and Lanza v. DeRidder Coca Cola Bottling Company case, both supra, was fully approved by the Supreme Court of the State of Louisiana in Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677, 679, and we quote therefrom:
"This court has never had under consideration a case involving injury resulting from the explosion of bottled carbonated beverages, but our attention has been called to the fact that the Court of Appeal for the First Circuit has had occasion to pass upon similar questions in the cases of Auzenne v. Gulf Public Service Co., [La. App.] 181 So. 54 and Id., [La.App.] 188 So. 512, and Lanza v. DeRidder Coca Cola Bottling Co., [La.App.] 3 So.2d 217.
"In the Auzenne case the Court of Appeal based its decision on the authority of Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 500, 39 A.L.R. 1001. The Supreme Court of Missouri in deciding the Stolle case gave a thorough analysis of the many cases wherein the doctrine of res ipsa loquitur was invoked in cases dealing with the explosion of bottles containing carbonated beverages manufactured for sale but rested its conclusion on the reasoning in the Payne case. [Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087]. In the opinion it is said: `These bottled beverages, containing explosive gases, are put upon the market with the intention that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to the reasonable and ordinarily *342 careful transportation and handling of these goods in the usual course of business.'
"In the later case (The DeRidder case) the appellate court (3 So.2d 218), reaffirming its decision in the Auzenne case, held: `With this proof (that the bottle was not improperly handled after it left the possession of the defendant company), plaintiff made out a prima facie case of negligence against the defendant as it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or improper charging or mixture of the contents.' (Italics and Brackets ours.)
"A review of the authorities holding to the contrary, cited by counsel for defendants, discloses that they differ in the various jurisdictions throughout the country in the application of this maxim of res ipsa loquitur, some states holding that the rule will not be applied where a single bottle only has exploded; others holding that the rule will be applied and the case submitted to the jury where it is shown that several bottles manufactured by the same company have exploded; still others holding that after the bottle has left the bottling company, the plaintiff must show affirmatively the proximate cause of the accident was due to the negligence of the manufacturer in order to recover.
"A thorough analysis of these various authorities, consideration being given to the facts in each case on which the decision of the court was primarily predicated, convinces us that the view adopted by the Court of Appeal for the First Circuit is not only the most sound, but also in accordance with the jurisprudence of this state on related subjects. As was very aptly said in the Stolle case, supra, the application of the doctrine of res ipsa loquitur to cases of exploding bottles `is fair to the manufacturer, and will afford the consumer of the beverage and those handling it in the ordinary course of trade reasonable protection, while the contrary rule leaves them practically without redress.'"
Also see Redmond v. Ouachita Coca Cola Bottling Company, La.App, 76 So.2d 553.
The facts reveal that approximately one day before the accident which occurred in the latter part of July, 1959, the defendant company delivered to the store of the plaintiffs a number of cartons and cases of root beer which he placed upon a shelf. The next day Mrs. Bonura picked up one of these cartons, which contained six bottles, from the shelf and set it one top of the cooler and from there she intended to lift the bottles from the carton and put them in the icebox. Mrs. Bonura withdrew one bottle of the root beer from the carton and reached for another bottle but before she touched it, it exploded and glass struck her on the chin and about the side of the face. Mrs. Bonura testified that she did not handle the carton rough or drop it and, in fact, had not even touched the bottle at the time it exploded. We gather from the testimony that the upper portion of the bottle broke into small pieces when it exploded for it is undisputed that the lower part of the remains of the broken bottle were given to the employee who had delivered the carton from the defendant company on the preceding day. This was not denied nor were the remains of the bottle produced on the trial of the case. Mr. Bonura corroborated the testimony of his wife that she had picked this carton up from the shelf where it had been placed by the employee of the defendant company on the preceding day and put it on the cooler where she intended to transfer the root beer to the ice box. Mrs. Bonura further stated positively that she did not slam the carton down on the ice box nor hit the bottle against anything and that nothing struck the carton prior to the explosion. Mr. Bonura testified that when the bottle exploded: "* * * I holler at her, she better mind, you gon' cut your head off. She say, it done done it, so I looked at her and she was bleeding, I seen the blood on her face, is what I told her."
The employee of the defendant company who delivered the root beer to the plaintiffs' *343 store testified that he had done so on or about July 25, 1959 and he could remember no incident that happened on that day that could have damaged the bottles in any way prior to delivery. On the following delivery date to the plaintiffs' grocery store, when he went in Mrs. Bonura had a broken bottle and told him she had got cut by this bottle and she removed the remains from the shelf and gave them to him and he replaced the bottle by giving her another one for it. The witness remembered getting the bottle and that "it was broke down around the bottom, you know." He threw this bottle away. He testified that Mrs. Bonura on that day showed him the cut on her face along the lower right side of the chin but at that time he did not notice any other obvious cuts on or about her face. There was no other testimony by the defendant company.
Counsel for defendant takes the position as shown by his brief that Mrs. Bonura's testimony is not worthy of belief because of two contrary statements which she made to Dr. Peek and we quote from counsel's brief:
"Mrs. Bonura admits that she picked up the carton of drinks and placed them on the Coca-Cola box. She further testified that she did not hit the bottles against each other or against anything else or that she shook the bottles or turned them up-side down, but it is obvious that the Trial Judge did not believe her testimony as to the manner in which she handled the carton and the bottles it contained.
"It certainly appears that the Lower Court had ample reason to doubt the veracity of Mrs. Bonura, who, in answer to questions on cross-examination denied that she had attempted to treat herself and emphatically denied she had used an antiseptic or iodine or anything of that nature. The testimony was as follows: (Tr. 37)
"`Q. What did you do, of your own, after this happened, as far as medical treatment to yourself? A. To myself'
"`Q. Yes, ma'm. A. I couldn't do nothing else.
"`Q. Well, what did you do in the way of treatment to yourself? A. I couldn't fool with my own face. I was damaged and that's all I know.
"`Q. Did you use any antiseptic or iodine or anything like that? A. Oh, no, indeed.
"`Q. You used nothing? A. Not on my suggestion, I wouldn't use nothing like that.'
"The testimony of Dr. Peek called by the plaintiff was as follows:
`"Q. What kind of treatment did you prescribe for it, Dr. Peek? A. I suggested that she stop the use of the chemicals that she had been using, particularly the iodine, and that she use warm, saline compresses, and leave off any medication, just a clean dressing.
"`Q. Doctor, what gave you the impression she was using iodine? A. She told me she was.'
"The testimony of Dr. Waggenspack, also called by the plaintiff appellant was as follows: (tr. 59)
"`Q. Now, was it obvious that some medicines had been used by her, in treating this? A. Yes, there had been local applications of home remedies, yes.'
"Also, according to Dr. Peek's records, Mrs. Bonura stated to hime that the bottle exploded `while opening a root beer bottle' (Tr. 51).
"The Lower Court had the opportunity to observe Mrs. Bonura and to listen to her testimony and to judge the truthfulness of her testimony. It is quite apparent that the Lower Court rejected her testimony as to the manner *344 in which she handled the carton of bottles."
We do not know why the Lower Court rejected the testimony of the plaintiffs as to the manner in which Mrs. Bonura handled the carton of bottles prior to the explosion as his oral reasons were not dictated into the record.
Counsel for plaintiffs suggests that Mrs. Bonura was illiterate and that it is difficult from reading her testimony to know whether she fully understood the questions or that she meant to deliberately tell an untruth as to her use of iodine on her wounds after the accident. As to the statement by Dr. Peek which he stated Mrs. Bonura made to him that the explosion occurred "while opening a root beer bottle", he stated on cross examination that he could possibly have been mistaken as to the exact words. In addition, if she had actually been opening a root beer bottle there would have been nothing unusual or detrimental to her cause per se, as all of them must be opened and if they are opened in the normal, usual, manner, they should not explode. Had she been opening a bottle of root beer at the time of the explosion there would have been no reason why she should not have stated that from the beginning, and if she had, it would be more probable that her hands or hand would have been cut than her chin.
Even if we accept as true the fact that she understood the questions and that she denied using iodine as an after treatment when as a matter of fact she had, we do not consider it as having branded her testimony as absolutely false as well as that of her husband as to the occurrence of the accident and the manner and method in which the carton was taken from the shelf and set on the cooler. There is no testimony other than the carton was handled in a normally careful and prudent manner, that it was not dropped or struck against any object or that she was at the time attempting to open a root beer bottle. The testimony shows that she had one already in her hand, which would have been the one that she would have opened if she was going to drink it. There was no customer in the store. Furthermore, the root beer which she had in her hand and those left in the carton were hot, and no one ordinarily drinks anything but a cold beverage.
We are convinced from the written record that the plaintiff has borne the burden of proof necessary to show that the bottle was not improperly handled by plaintiffs after it left the possession of the defendant company, which placed the burden upon the defendants, and as no witness other than the employee who delivered the bottle to the plaintiff's store testified on this point and then only to the fact that the beverage delivered to the plaintiff's store had been properly handled and delivered by him, we, therefore, conclude that the plaintiff has proven liability on the part of the defendant company.
We now take up the question of damages. First, the plaintiff, Carlos Bonura, testified that he had paid Dr. Wraggenspack $25, Dr. Peek $29, and Dr. McConnell $37, and had spent closer to $20 than $15 for medicine, which we must accept as $15 as it is not definitely above that, totaling $106. The testimony will not support a judgment for loss of time in the store by his wife and co-plaintiff.
As to Mrs. Bonura's damages, according to her testimony the glass struck her on the chin and on the sides of her face, however, the only apparent open wound immediately after the explosion was the cut on her chin which was not considered severe at the time. Evidently, Mrs. Bonura did not consider the injury serious until it failed to heal and apparently got infected, and on September 3, 1959 she went to see Dr. Waggenspack. This doctor stated that a physical examination revealed "questionable foreign body in the chin," although he could not feel the foreign body. The injured area "suggested a chronic infectious process with an opening in the middle." He advised treatment and if she did not obtain relief by the next week he would refer her to a surgeon which he did. Dr. *345 Waggenspack saw her repeatedly since September 3, 1959 until the date of the trial for the lesions on her face and "her other illnesses." His last recorded visit in the office was on June 24, 1960 and at that time he testified: "She was still having lesions on her face, yes." Mrs. Bonura suffered from places breaking out on the sides of her face, one would heal up slowly and then another would break out. Dr. Waggenspack testified that each of these lesions had the same general appearance as the one caused by the cut on her chin when he first treated her. The doctor could not say what caused these other lesions, however, it is definite that they were caused either by small particles of the glass that became imbedded in her face and later would erupt and cause a lesion or sore and it would slowly heal, or the original cut on her chin became infected and the infection then spread on her face. She had never had any trouble with any such sores before in her life or any pimples on her face. From the testimony we can only conclude that either condition was caused by the original explosion. As a matter of fact, Dr. Waggenspack testified positively that he was sure that Mrs. Bonura had not had any blemishes before.
Dr. Peek testified that he saw Mrs. Bonura on September 14, 1959 the first time, and that she had the lesion on her chin, and then some three or four months later in January 1960, the first lesion had healed leaving a small scar but she had developed a small lesion on the left side of her face which appeared similar, as though it had been picked. Mrs. Bonura stated to him that she was removing glass. It was Dr. Peek's opinion that the iodine being an irritant prevented the healing of the original cut on the chin and contributed to the irritation.
Dr. McConnell saw Mrs. Bonura on Oct. 2, 1959 and his report states that she had a granular lesion on her chin which was treated by two other physicians before he saw her and that the lesion was excised and she subsequently developed a similar lesion higher on the chin and this was also excised; that she had given him a history of some sort of pop bottle exploding and glass sticking in her face; but that since he had seen the patient almost three months after the date of the accident he could not say whether or not the lesions had any connection with the accident.
Dr. Azar saw Mrs. Bonura on Oct. 19, 1960 and examined her and found small scars consisting of one 3 to 4 mm. in the midline of the chin beneath the Vermillion border of the lower lip; a 2 to 3 mm. scar just to the left of this area and below the angle of the lips on the left side; and two small areas on the left and right cheek. He stated that the areas were scarred and showed signs of having been injured but no evidence of infection was present nor could he palpate any foreign body beneath the skin. He was of the opinion that Mrs. Bonura had recovered from "these small lacerations suffered at the time of her injury, and I feel that a slight facial disfigurement is present * * *".
Thus, from the evidence we have a case of an apparently slight original injury and cut which became irritated and infected, causing other lesions to break out and slowly heal, which would be followed by other similar lesions on each of Mrs. Bonura's cheeks, or small fragments of glass were imbedded in her cheeks at the time of the explosion which slowly became inflamed and caused a lesion which she stated she picked glass from and it would slowly heal. This condition existed for approximately sixteen months according to her testimony and Dr. McConnell testified he knew it existed over a period of approximately twelve months as her last office visit to him was on June 24, 1960.
There is no doubt that she suffered pain, mental anguish and embarrassment from the condition as well as small scars which were described by Dr. George Azar, supra. We believe the facial disfigurement, however, is slight.
*346 Counsel for defendant submits that an award of $300 would adequately compensate Mrs. Bonura for the injuries of which she complains and cites McCrory v. Great American Indemnity Co., La.App., 92 So.2d 742, in which the Court there awarded the sum of $150 for minor facial scars described by the Court as being "of the minor scars in the nature of discoloration of the cheek." Plaintiff in this case, however, was awarded other damages for pain, suffering and other losses amounting to some $2,200.
We do not feel that this case is controlling of the one at bar as we must not only award damages for the scar but also for the pain, suffering, and humiliation or embarrassment that the plaintiff underwent for some fourteen to sixteen months as a result of the accident.
Counsel for plaintiff cites the case of Anderson v. Simmons, La.App., 75 So.2d 34, Taormina v. Reid, La.App., 71 So.2d 351, and Mitchell v. State of Louisiana, La.App., 81 So.2d 62.
In the first cited case plaintiff suffered a deep cut on her upper forehead and was confined to the Charity Hospital in New Orleans for a period of five days in which she was kept under investigation and then returned to her home and she remained there for two months or more. There was no medical testimony adduced, only the chart or record of the hospital which showed no fractures or residual injuries. At the time of the trial the Judge observed in his reasons for judgment that the scar resulting from the cut on plaintiff's forehead was completely concealed by a thick head of hair. In this case, plaintiff's award was reduced to $750, for injuries, pain and suffering.
In the Reid case, supra, the plaintiff received a laceration of the forehead involving the hair line but no evidence of bone injury or other apparent severe injury. The wound healed and left a scar approximately one and one-half inches in length in the middle of the forehead in the hair line. The accident occurred on Friday and plaintiff returned to his work the following Monday, which was the third day after the occurrence, although he stated that he did spend the weekend in bed. The court found that the only permanent effect of this accident was the scar in the hair line and there was no medical or other testimony to show whether it was visible or not. Furthermore, the plaintiff was a male. In this case an award of $750 was made.
In Mitchell v. State of Louisiana, supra, the plaintiff received a cut or laceration on the left side of her forehead just below the hair line, which, in healing, left a scar about one-half inch long, and for such injury, pain and suffering she received an award of $750.
In the present case, Mrs. Bonura was subjected to an active, embarrassing, painful condition for more than a year, which left a small scar in the mid-line of the chin, another just to the left of this area and below the angle of the lips on the left side, and two small areas on the left and right cheeks, or a total of six small scars on her face. However, these scars are very small.
We believe that an award of $1,000, would be adequate.
It is therefore ordered that the judgment of the District Court be annulled, set aside and reversed, and that there now be judgment in favor of Carlos Bonura, individually, and against Barq's Beverages of Baton Rouge, Inc., in the sum of $106, together with legal interest thereon from judicial demand until paid.
It is further ordered, adjudged and decreed that there be judgment in favor of Mrs. Sandra Cucchiara Bonura and against Barq's Beverages of Baton Rouge, Inc., in the full sum of $1,000, together with interest thereon from judicial demand until paid.
It is further ordered, adjudged and decreed that the fees of Dr. Waggenspack, *347 Dr. McConnell, and Dr. Peek be fixed at $50, each and taxed as costs.
It is further ordered that the defendant pay all costs of this suit.
Reversed.