REGAN, Judge.
Plaintiffs, Gail and Jerry Hudnall, instituted this suit against the defendants, The Louisiana Coca-Cola Bottling Company, Ltd. and its liability insurer, The Travelers Insurance Company, endeavoring to recover the sum of $29,402.00, representing the monetary value of personal injuries and medical expenses incurred by them when a bottle containing Coca-Cola exploded on November 28, 1960 in Giordano’s Super Market and a piece of glass emanating therefrom severed the Achilles tendon above the heel of plaintiff’s left foot.
Plaintiffs initially invoked the doctrine of res ipsa loquitur, and in the alternative, they insisted that the negligence of the defendant’s agent caused the accident and the injuries resulting therefrom.
The defendants denied any liability for the accident and asserted that the bottle was caused to explode when a customer of the super market inadvertently knocked it from the shelf, where it was displayed, to the floor of the establishment.
From a judgment in favor of Gail Hud-nall in the amount of $8,000 for personal injuries and in favor of her husband, Jerry Hudnall, in the amount of $973.22 for medical expenses incurred by, the community, the defendants have prosecuted this appeal.
The litigants agree that the plaintiff incurred an injury to the Achilles tendon above her left heel when a glass fragment emanating from an exploded Coca-Cola bottle pierced her leg during the course of a shopping trip in Giordano’s Super Market. The defendant concedes that the plaintiff was not responsible for the rather unusual chain of events which occurred on that day, and which ultimately resulted in her injury.
The trial court predicated its judgment for the plaintiffs on a finding that the defendant’s agent was negligent, in that he kicked the bottle which' caused it to explode; however, our review of the record convinces us that the plaintiffs did not actually prove the negligence of the agent in this respect by a reasonable preponderance of the evidence.
Therefore, the initial question which this appeal has posed for our consideration is whether the doctrine of res ipsa loquitur is applicable to the facts hereof which, if so, would have the ultimate effect of shifting the burden of proof upon the defendant to establish its freedom from fault in order tó avoid liability. The answer to this question requires a careful analysis of the record.
The record reveals that on the day she was injured, plaintiff was visiting Giorda-no’s Super Market, a rather small self-service store located in Belle Chasse, in order to purchase foodstuffs. She and the proprietress were conversing near the bread counter when their attention was attracted by an explosion.
Plaintiff instinctively turned to ascertain the cause thereof, and at that instant she noticed that her leg was- bleeding profusely. Simultaneously, Mrs. Giordano, the proprietress, likewise turned and observed that a “coke” bottle had exploded leaving the liquid contents thereof and glass fragments emanating therefrom, scattered in the aisle. The noise originated in front of the shelf where full cartons of Coca-Cola were displayed and which was located approximately 12 feet from where plaintiff and Mrs. Giordano were engaged in an animated conversation.
Mrs. Giordano was unable to explain the cause of the explosion but related that there were four people in the store when it occurred; namely, herself, the plaintiff, a colored helper employed on the beverage delivery truck, who, together with a hand- *842 truck, was positioned directly in front of the Coca-Cola rack, and Mrs. Braud, a customer who was standing several feet behind the helper and away from the Coca-Cola shelves.
Mrs. Braud fully confirmed the proprietress’ testimony in the foregoing respect. In addition thereto she recounted that she was moving her cart into the aisle adjacent to the Coca-Cola rack when she noticed the colored helper near the rack pushing a handtruck loaded with full cases of Coca-Cola. Just before the explosion occurred, the helper started to back into her and in order to avoid coming in contact with him, she stepped backward. In the course of this maneuver, she heard the explosion and subsequently noticed a piece of the broken bottle near the front of her grocery cart.
Although Mrs. Giordano and Mrs. Braud unequivocally testified that the colored helper was moving around with his hand truck in front of the rack preparing to replenish the shelves thereof with filled cartons of “coke”, the defendant’s witnesses, both of whom were its employees, laboriously insist that it was the white driver who was standing by the rack and the colored helper was in the storeroom.
The driver, in order to sustain the foregoing assertion, explained that it was his routine when making a delivery to enter the store and arrange the beverage rack for the reception of new stock and then to determine how many cases of “coke” are required to fill the shelves. In the meantime, the helper is normally engaged in loading cases thereof on a handtruck which are then wheeled into the storeroom. Once the driver ascertains how many bottles of Coca-Cola should be placed on the display shelves, he walks to the storeroom and instructs his helper to bring in the required amount.
The driver related that on the day of the accident he had just finished determining the amount of Coca-Cola which the store required, when the explosion occurred. He further laboriously asserted that just before the explosion occurred he heard bottles tumbling “like rocks” from the root beer rack, which, he speculates, possibly knocked the coke bottle over.
The helper corroborated the driver’s version of what occurred, and reiterated that from his remote position in the storeroom he also heard a cascade of bottles hitting the floor. The helper insisted that he had not been in the main part of the store when the accident occurred. Of course, as we have said, this is very definitely disputed by both Mrs. Giordano, the proprietress, and Mrs. Braud, a customer, who place the colored helper and his handtruck next to the Coca-Cola shelves when the explosion occurred.
Both employees of the Coca-Cola Company testified that after the explosion there were several root beer bottles on the floor, which contradicts the testimony of the proprietress and Mrs. Braud who observed only the broken fragments of the Coca-Cola bottle and the liquid contents thereof on the floor. Significantly, the colored helper who cleaned up the debris asserted that the only glass which he picked up emanated from a broken Coca-Cola bottle.
As we have observed herein-above, the record does not support the trial court’s conclusion that the explosion occurred when the colored helper accidently kicked over a bottle of Coca-Cola. No one saw this, nor did anyone say that they actually saw a “coke” bottle fall to the floor before it exploded. However, it is interesting to note that at least one of the defendant’s employees was in an excellent position to have noticed what did occur to cause the explosion.
Thus, in order to permit the plaintiff to establish a case, it was essential that she invoke the evidentiary rule of res ipsa loqui-tur herein, since she was totally unaware of the manner in which her injury was inflicted.
*843 In order for this doctrine to apply in cases involving the explosion of a bottle containing a carbonated beverage, the plaintiff must initially establish that she was not at fault and possessed no knowledge of what caused the bottle to explode. In addition thereto it is incumbent upon the plaintiff to prove that the bottled beverage was not improperly handled, after it left the manufacturers plant, by a third person so as to cause the bottle to explode.[1]
The litigants, as we have said herein-above, concede that the plaintiff herein is without fault and possesses no knowledge relative to the cause of the explosion.
Further, the evidence adduced herein establishes that the bottle was neither tampered with nor improperly handled after it left the defendant’s plant.
When the accident occurred, the defendant owned and maintained a beverage rack in the Giordano Super Market. The bottler’s agents serviced this rack, and in so doing, were responsible for maintaining a full display. Although Mrs. Giordano testified that customers occasionally leave empty bottles in the aisle near the “coke” rack, she asserted that she had checked the aisle ten minutes before the explosion and none had been left on the floor thereof. She said that she frequently polices this aisle because of this practice. The record further reflects that neither Mrs. Braud nor the plaintiff had purchased any bottled beverages prior to the accident.
According to the plaintiff’s witnesses, whom the trial judge found more credible in his reasons for judgment, the driver had already prepared the rack to be replenished with Coca-Cola because the helper was wheeling in full cases of the beverage and was in fact in front of the Coca-Cola rack when the explosion actually occurred.
Predicated on the foregoing evidence, we are of the opinion that the plaintiff has affirmatively established both her freedom from fault and the fact that the bottle which exploded was not improperly handled by a third party. In fact, if there was improper handling thereof, the inference is inescapable that this was done by the defendant’s employee, because he was engaged in servicing the Coca-Cola display shelves when the explosion occurred.
Thus, having established a prima facie case of negligence, the doctrine of res ipsa loquitur must of legal necessity apply, and its effect is to shift the burden of proof to the defendant, who must then prove its freedom from fault in order to exculpate itself from liability.[2] In reaching this conclusion we have not overlooked the rationale nor the ratio decidendi of Monroe v. H. G. Hill Stores,[3] which the author hereof participated in and which result he thoroughly subscribes to.
In that case we held, with respect to the defendant, Falstaff Brewing Corp., that there was no affirmative proof of negligence on the part of this defendant, and since the plaintiffs have not eliminated the possibility of some other cause, the doctrine of res ipsa loquitur is not applicable; and with respect to the defendant, H. G. Hill Stores, Inc., we held that there was no room for the application of the doctrine of res ipsa loquitur since the plaintiff was standing directly in front of the beer shelf examining pots and pans which were on sale ánd therefore “ * * should be in a better position than any other person to know the cause of the fall of such a bottle.” We concluded in that case *844 as a result of evidence adduced therein, “ * * * that the bottle fell from the shelf to the floor and broke as the result of the fall.”
The jurisprudence is replete with opinions which discuss the reason for thus shifting the burden of proof to the defendant in these cases; therefore, no useful purpose would be served by reiterating those reasons herein.
It has frequently been pointed out that in bottling a carbonated beverage which has explosive potential, the manufacturer must assume responsibility for the injury caused when the beverage explodes, or affirmatively prove that it was not negligent in bottling the beverage. In many cases, some of which have been written by the author hereof, expert testimony has been adduced to show that such an explosion was an impossibility, and yet it is not an infrequent occurrence. This is quite obvious from a simple count of the number of cases appearing in the jurisprudence emanating from this and other states where injury was caused by an exploding bottle containing a carbonated beverage.
Therefore, the next question posed for our consideration is whether the defendant has affirmatively shown that it was not negligent.
The testimony of the defendants’ witnesses in substance is to the effect that root beer bottles tumbled from the shelf and they surmise that these bottles knocked the “coke” bottle to the floor. However, they both admit that they did not see the Coca-Cola bottle fall to the floor and then explode. Defendants further argue that this version is buttressed by Mrs. Braud, who testified that the explosion occurred after she stepped back with her cart to avoid the “coke” helper who was backing into her. They simply imply and want this court to draw the inference that Mrs. Braud caused these bottles to fall. She very honestly stated that to the best of her knowledge she did not come into contact with the beverage rack, nor did she see a Coca-Cola bottle fall from its shelf to the floor.
It is very significant that the helper employed by the defendant bottler did not recall seeing any root beer bottles on the floor when he cleaned up the debris after the accident. If they had cascaded from their shelves to the floor, as these employees insist, they certainly would have been present after the accident occurred, and when the colored helper cleaned up the debris.
The trial judge, in written reasons for judgment, stated that the Coca-Cola employees were unworthy of belief, and we thoroughly agree with this conclusion in view of the fact that the “coke” helper who testified that root beer bottles had cascaded to the floor, but he could not remember seeing any on the floor when he cleaned the aisle. We further believe that the disputed positions of the driver and the helper when the accident occurred are pertinent only insofar as the simple credibility of defendants’ witnesses are concerned, and that the defendant’s driver was a more capable witness than defendant’s helper was. However, we have no doubt at all that the colored helper was moving his hand truck in the aisle next to the Coca-Cola shelves when the explosion occurred, and that the defendant’s driver was not present despite his laborious assertions to the contrary.
In view of the foregoing, the trial court properly rendered a judgment in favor of the plaintiffs and against the defendants.
Defendants next contend that an award of $8,000 to the plaintiff was excessive in that it was not justified by the medical evidence.
As a result of the explosion, plaintiff’s leg was cut severely, causing it to bleed profusely. Immediately following the accident, she was treated by a physician whose office was located in her neighborhood. He merely bandaged the leg and *845 stopped the bleeding. Plaintiff then consulted her own physician, a Dr. Puneky, who treated her for approximately three weeks before referring her to Dr. Walter Brent, an orthopedist.
Dr. Brent testified that he first examined the plaintiff on December 20, 1960, or about three weeks after the accident, and discovered that she had an injury to the Achilles tendon in the left leg, which evidenced severe swelling. He stated that he first tried conservative treatment which was not satisfactory, and he then recommended surgery. Because of family complications, plaintiff was unable to undergo surgery until June 23, 1961. At that time the orthopedist found the tendon had been lacerated and in surgery he was required to shorten it so that it would be reduced to a normal size. She was then placed in a cast which was removed six days later because an infection occurred. It was then necessary to immobilize her for quite some time. On July 25, 1961, a walking type cast was applied, which was kept on for approximately one month. When the trial hereof occurred, on October 30, 1961, the plaintiff’s incision was still draining and Dr. Brent thought that it would be necessary for her to undergo surgery again in ■order to have the sutures removed. She was walking at the time of the trial with the foot supported by an elastic bandage. Dr. Brent stated that she would have some permanent disability because of the shortening of the Achilles tendon, but he could •not rate the disability when the trial hereof ■occurred.
Plaintiff related that she walked and experienced pain when she did so. She said that she was unable to walk on the ball of her left foot and could only use her heel. She is 22 years old and the mother •of a young child. She explained that although her injury was painful, she was forced to remain on her feet for long peri■ods of time in order to properly care for her child and to perform various household ■duties, since her husband’s income did not permit the employment of a domestic servant. In fact, after surgery was performed on the plaintiff’s leg, she was fully immobilized and it was then necessary for her and her family to move to her mother’s home because she found it impossible to maintain her household.
The foregoing testimony and the medical evidence adduced herein is uncontradicted since the defendants failed on the trial hereof to offer the opinion of an expert in rebuttal thereof.
A careful review of this evidence leads us to the conclusion that an award of $8,000 was excessive, but in view of the fact that plaintiff has incurred a partial disability at a youthful age, which will be permanent, we are of the opinion that she is entitled to an award of $6,000 which we believe to be adequate insofar as money may make it so.
For the reasons assigned, the judgment appealed from is affirmed insofar as it fixes liability, and it is now ordered that the judgment be amended so as to reduce the award to plaintiffs from $8,973.22 to $6,-973.22. All costs are to be borne by the defendant.
Affirmed and amended.

. See Auzenne v. Gulf Public Service Co., La.App., 181 So. 54; Lanza v. De Ridder Coca Cola Bottling Co., La.App., 3 So.2d 217; Watkins v. Gulf Refining Co., 206 La. 942, 20 So.2d 273; Johnson v. Louisiana Coca-Cola Bottling Co., La.App., 63 So.2d 459; Beck v. United States Fidelity & Guaranty Co., La.App., 76 So. 2d 120; and Bonura v. Barq’s Beverages of Baton Rouge, La.App., 135 So.2d 338.

. Watkins v. Gulf Refining Company, 206 La. 942, 20 So.2d 273.

. La.App., 51 So.2d 645