159 So.2d 410 (1963)
Clyde S. WOODS et al., Plaintiffs-Appellees,
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 10054.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
Rehearing Denied January 9, 1964.
*411 Cook, Clark, Egan, Yancey & King, Shreveport, for appellants.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
Clyde S. Woods and his wife were involved in a motor vehicle collision on December 22, 1961, at Common and Texas Streets in Shreveport, Louisiana. The Plymouth automobile in which they were riding was stopped for a red light and was struck from the rear by a Buick automobile being driven by Mrs. Janice L. Brenner. The latter car was owned by Henry Brenner and insured by Grain Dealers Mutual Insurance Company, the named defendants in this suit. This action is in tort for personal injuries and medical expenses incident thereto. The defendants conceded liability and the case was tried upon the issue of quantum. In advance of the trial, however, the defendants requested by formal motion the opportunity to have both claimants examined by Dr. Bennett H. Young for purposes of evaluation. The motion was denied by the trial judge and after submission of the case judgment was rendered in favor of Clyde S. Woods for $4,584.45 and in favor of Mrs. Woods for $3,500.00. The defendants have appealed.
On this appeal appellants have assigned as errors: (1) that the District Court erred in refusing to order a reasonable medical examination of the claimants by Dr. Bennett H. Young, and holding that appellants were entitled to only one medical witness in this personal injury suit; and (2) that the awards as to each plaintiff are excessive and should be reduced.
In personal injury cases, excluding those in connection with the Workmen's Compensation Law, the right of a litigant to compel a claimant to submit to a physical or mental examination arises under Article 1493 of the LSA-Code of Civil Procedure, which reads:
"In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending or in which the judgment was originally rendered may order him to submit to a physical or mental examination by a physician, except as otherwise provided by law. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."
The source of this article is Rule 35 of the Federal Rules of Civil Procedure (28 U.S.C.A.). Article 1493 was taken verbatim from LSA-R.S. 13:3783, subd. A, now repealed, *412 which was introduced into our law by Act 202 of 1952. Prior to that time Louisiana statutory law did not afford similar relief in personal injury suits. As a consequence there developed in our jurisprudence a doctrine, or legal method, designed to force a claimant to submit to a reasonable request for medical examination or in default to sustain penalties for refusal. Thus, in Kennedy v. New Orleans Railway & Light Company, 142 La. 879, 77 So. 777 (1918), the Supreme Court reduced an award by one-half due to plaintiff's refusal to undergo a physical examination. Also, in Bailey v. Fisher, 11 La.App. 187, 123 So. 166 (Orl.1929), the medical testimony of plaintiff's physician was excluded because of plaintiff's refusal to submit to an examination by defendant's physician. It is interesting to observe the reasons advanced by our Supreme Court for its action in Kennedy v. New Orleans Railway & Light Company, supra, which are worthy of attention. Chief Justice Monroe, as the author of the opinion, wrote:
"We find no fault with the ruling of the trial judge to the effect that he was without authority to require plaintiff to permit an examination of her person; but, on the other hand, we do not see how the jury and the judge could reach a legal verdict and judgment against the defendant upon an ex parte version of physical injuries, of the nature and character of which plaintiff permitted only the witnesses selected by herself to become informed; for, if defendants in such cases can be condemned upon that basis, they will always be at the mercy of the plaintiffs, who have only to complain of injuries not visible outside of their clothing, produce themselves and their own selected witnesses to testify to them, and sit tight, with no fear of possible contradiction. Such a proceeding, however, fails to furnish the principal element required in due process of law, to wit, a hearing, and ordinarily would be dismissed, since a court cannot well place a value upon ex parte testimony."
Our research relative to Federal Rule 35 and Louisiana Case Law has failed to develop to our satisfaction any particularly informative precedents. American Jurisprudence gives the following comment:
"A defendant may be entitled to have plaintiff examined more than once to determine the extent of his injuries, depending upon the particular circumstances of the case. If the necessary information was obtainable upon the first examination, or another examination will unnecessarily delay the trial, it is uniformly held that the defendant cannot require the plaintiff to submit to another examination. A court cannot be compelled to subject the plaintiff to limitless examinations in order that some medical expert may be procured who might agree with a theory, character of disease, or injury contended for by the defendant. But when the plaintiff's alleged injuries are numerous, severe, and permanent, and an examination was made at the defendant's instance before the action was brought or a claim for damages made, so that it was not then known what injuries he would claim to have received, the court should grant defendant's motion for another examination made six months later and after action brought, if the developments during that period appear to be essential to ascertain the severity and permanency of the injuries." [Am.Jur. 89, Verbo Discovery and Inspection, p. 91.]
This suit was instituted on December 12, 1962. On January 3, 1963, plaintiffs' counsel informed defendants' attorney that at the motion hour on January 9, 1963, this case would be set for trial on January 17th or 18, 1963. On January 9, 1963, defendants' counsel served the motion requesting an orthopedic examination of both plaintiffs by Dr. Bennett H. Young on January 14, *413 1963. The court fixed the motion for hearing on January 16th and set the case for trial on January 18th, subject to the rule. After trial of the rule on January 16th judgment was rendered recalling the rule. The case was taken up for trial on January 18, 1963.
In their motion the defendants asserted that they had good reason to believe that plaintiffs were not injured as severely as pretended; that the request for an additional examination of the plaintiffs by Dr. Young was not unreasonable; that no danger or severe pain would likely result therefrom; and that plaintiffs had secured examinations for treatment from two physicians in connection with their injuries and defendants, therefore, should not be limited to only one expert in preparing their defense. In opposition to the motion and rule nisi, counsel for plaintiffs asserted through answer that defendants' only purpose was to accumulate medical testimony and that Article 1493 provides that such an examination is discretionary with the court and allows for an examination by one physician. It was further pointed out that plaintiffs had been examined on December 18, 1962, by Dr. Willis J. Taylor, an orthopedic surgeon, and that all reports received from plaintiffs' medical experts, Dr. Tom Smith and Dr. E. C. Simonton, the latter an orthopedist, were submitted to plaintiffs' counsel; and, finally, it was asserted that Dr. Taylor's examination was essentially negative.
After a most careful examination of the record, particularly with reference to the medical findings of Drs. Smith, Simonton and Taylor, we have come to the conclusion that the trial court did not abuse its discretion in refusing to require plaintiffs to submit to an additional orthopedic examination by Dr. Young. The record discloses Dr. Smith was the personal physician of plaintiffs. He treated Mrs. Woods from December 28, 1961 to March 22, 1962 and Mr. Woods up to January 16, 1962; and that after the dates mentioned Dr. Smith did not again professionally examine or treat either of plaintiffs in connection with injuries received in the accident. Dr. Smith, however, operated on Mrs. Woods in November, 1962, for the removal of her gall bladder. Dr. Simonton examined and prescribed for Mrs. Woods first on May 1, 1962. She was seen again on May 14th and subsequently during September, October and November of 1962. Mr. and Mrs. Woods motored to Florida about the first of June and returned in September, during which period they did not have a doctor. The last occasion on which Dr. Simonton saw either Mr. or Mrs. Woods was on November 13, 1962. Mrs. Woods soon thereafter had the gall bladder operation by Dr. Smith. Dr. Willis Taylor conducted his examination on December 18, 1962. Dr. Simonton did not testify affirmatively that his objective findings were causally connected with the accident and he recognized as contributing factors certain chronic conditions due to the ages of the patients, Mr. Woods being seventy years old and Mrs. Woods being sixty years of age. Considered together these circumstances, we believe, do not indicate additional expert testimony would be materially helpful to the court. We hold, therefore, that the trial court did not abuse its discretion in denying appellants' motion.
We turn now to the question of quantum. The trial judge gave written reasons for the awards made by him and reached the conclusion that both plaintiffs sustained aggravations of pre-existing arthritic conditions and that Mr. Woods suffered a forty per cent restriction of lateral bending to the left and right. He interpreted Dr. Simonton's findings as indicating that such conditions were made worse by the accident. However, this deduction is not substantiated by the record. Thus, Dr. Simonton testified as follows:
"Q. That condition of his neck, though, would be due to his age, isn't that right?
"A. No, it is something that everybody doesn't get just with time. Someone else may have trouble *414 elsewhere, but he has developed it in his neck over a period of time from either mild injuries in the past or wear and tear in that particular area.
"Q. Well, didn't he have a restriction of motion before the accident ever happened?
"A. I didn't examine him before.
"Q. But you figure he is bound to have had, isn't that right?
"A. It would be reasonable to assume that he did.
"Q. Wouldn't you say as much as forty per cent restriction in lateral bending?
"A. He could have.
"Q. So that really isn't any significant finding on this accident, isn't that right?
"A. Again, I can't say whether or not it is any different from the way it was before the accident, but it might have been the same.
"Q. So you talk about a physical block limitation, those are limitations due to a development over a period of time?
"A. Yes.
"Q. Arthritic condition?
"A. Yes."
The primary complaint of each of the plaintiffs was cervical or neck strain, a whiplash type of injury. Neither Mr. nor Mrs. Woods was hospitalized as a result of the accident and neither testified that they suffered from acute pain immediately after the accident. Their first consultation was with Dr. Smith on December 28th, some six days after the collision. The minor repairs to the automobile suggest that the collision was not too severe. Neither party sustained severe shock. With reference to Mr. Woods' injuries, Dr. Smith, as a result of the examination of December 28th, on February 9th reported a diagnosis of moderate degree strain of the muscles of the neck with partial disability of two or three weeks, and he stated there should be no permanent partial disability. Mr. Woods was not required to wear a surgical collar or any other type of surgical brace or support. Dr. Simonton prescribed a cervical collar for Mrs. Woods, but because of the discomfort she did not wear it. On March 20, 1962, in dismissing Mrs. Woods from further treatment, Dr. Smith reported:
"Since my last report of February 9, 1962, Mrs. Woods has continued to have some discomfort in her neck and lower back with pain radiating downward into the left lower extremity, and a painful left knee.
"As previously reported Mrs. Woods has a minimal degree of hypertrophic arthritis which no doubt has delayed her recovery from injuries sustained December 28, 1961.
"It is my feeling at this time that Mrs. Woods has reached a maximum state of improvement as far as treatment is concerned though she may continue to have some joint pains in the future which in my opinion will not be of a serious nature."
Both sides in this litigation appear displeased with the awards as made by the trial court. After carefully reviewing the evidence, we have concluded that Mr. Woods was not injured as seriously as Mrs. Woods and was subjected to less pain and suffering. The award in favor of Mrs. Woods appears to be neither inadequate nor excessive, and is affirmed. The award in favor of Mr. Woods is reduced to the sum of Three Thousand Forty-Eight and 45/100 ($3,048.45) Dollars. As so amended, the judgment is affirmed. Plaintiffs are assessed with costs of the appeal.