159 So.2d 384 (1964)
Arthur GABRIEL, Sr., Individually And For And On Behalf And For The Use And Benefit Of His Minor Child, Arthur Gabriel, Jr.,
v.
ROYAL PRODUCTS DIVISION OF WASHINGTON PRODUCTS, INC. And The Fidelity & Casualty Co. of New York, In Solido.
No. 1234.
Court of Appeal of Louisiana, Fourth Circuit.
January 6, 1964.
*385 Herman & Herman, Nicholas Masters, New Orleans, for plaintiff and appellee.
Christovich & Kearney, W. K. Christovich, New Orleans, for defendants and appellants.
Before REGAN, SAMUEL and HALL, JJ.
REGAN, Judge.
Plaintiff, Arthur Gabriel, individually, and on behalf of his minor son, Arthur Gabriel, Jr., instituted this suit against the defendants, Royal Products Division of Washington Products, Inc., a carbonated beverage manufacturer, and its liability insurer, Fidelity & Casualty Company of New York, endeavoring to recover the sum of $4,021.00, representing personal injuries and medical expenses incurred when Gabriel's wrist was cut by a fragment of glass which emanated from an exploding bottle containing root beer. Plaintiff explained therein that the explosion resulted from the negligent bottling of the beverage by the manufacturer thereof, since his son merely reached into a refrigerated box and touched the neck of the bottle when the incident occurred.
The defendants answered, denying negligence, and affirmatively asserted that the explosion was caused when the boy dropped the bottle.
From a judgment awarding plaintiff individually $21.00 for medical expenses and $500.00 for the use and benefit of his minor son for personal injuries, the defendants have prosecuted this appeal.
The record reveals that on December 17, 1960, Gabriel, Jr., who was then 13 years of age, entered Jacques Gros Grocery Store to purchase an assortment of soft drinks. The beverages were refrigerated in a self-service electric-dry box, which opened from the top. They were stored in the box on their sides and were selected by various customers who paid for them at a check out counter which was located near the entrance to the store.
Gabriel, the only witness to the incident, testified that he lifted the top of the metal box, reached in to pick up a bottle of Wright Root Beer, heard a shushing noise, and barely touched the neck of the bottle when it exploded. Several glass fragments flew past his head, and simultaneously he noticed that his wrist was bleeding. He *386 then requested help from Jacques Gros, the proprietor, who escorted him to his home and then accompanied Gabriel and his father to a doctor's office where treatment was administered for his injury.
As a result of the incident, the boy's right wrist was lacerated, and the only residual effect thereof is a small scar.
The defendants, on the trial hereof, requested the appearance of three witnesses to establish their defense that the explosion resulted when Gabriel dropped the bottle. The first was Gros, the proprietor, who testified that he and his son collected the fragments from the broken bottle and taped them back together. Gros stated that most of the glass was found inside of the refrigerated case.
Harold A. Levey, who qualified as an expert in the field of chemical and mechanical engineering, testified relative to the general appearance of broken bottles and the different characteristics of glass caused by an internal explosion, as opposed those broken by an external force. He examined the reconstructed bottle, found two points on the outside thereof which indicated it had been subjected to external blows. Levey explained that glass fractured from an internal explosion is random, while an external blow produces a fracture with lines radiating, very much like wheel spokes, from the point of impact.
On cross examination, however, Levey conceded that fractured glass would possess the same characteristics as those pieces which formed part of the bottle involved herein if it was partially cracked or defective when it exploded from internal pressure. In addition thereto, he expressed the opinion that a gust of warmer air, which ordinarily enters a refrigerator when it is opened, could cause a cracked bottle to explode.
The trial judge then interposed himself and asked Levey if the physical evidence, that is, the glass which emanated from the broken bottle, was compatible with Gabriel's account of the accident.
"Q. You were in court when the young man took the stand and testified he heard it (the bottle) give a `shushing' sound, is that at all possible?
"A. If that testimony is accepted at face value it would point at a possible explanation, that in the case where the bottle was fractured by impact with a prior crack and when it was touched or moved that internal gas began to leak through the crack."
Finally, Peter Graffagnino, president of the defendant manufacturer, enumerated in detail the precautions which are observed in the process of bottling the beverages, and he likewise elaborated upon the examinations given to the bottles used therefor. Relative to the inspection of the bottles, he explained that this is performed visually and the employees are instructed to discard any which are found to be cracked. However, he conceded that the cases which contain the bottled beverages are handled roughly by the company's employees when they are loaded into trucks for delivery unless they are very closely supervised.
The trial judge concluded from the evidence adduced herein that Gabriel did not cause the explosion and that the manufacturer had failed to exculpate itself from negligence in either bottling the beverage or in the shipping thereof to the grocery where it was offered for sale.
Counsel for the defendants assert that the plaintiff failed to establish that the bottle exploded. He contends that Gabriel's uncorroborated testimony constituted insufficient proof since their expert testified that the bottle was broken by an external blow.
In view of the fact that Gabriel was the only witness to the explosion of the *387 bottled beverage, we do not know what other evidence plaintiff could have offered to prove the occurrence thereof. In addition thereto, we do not think that the defendant's expert, Levey, affirmatively established that the bottle was broken from an external blow, since he very definitely conceded that Gabriel's account of the explosion was not incompatible with the physical evidence. It will be recalled that he testified that the entrance of warm air into a cool refrigerator could cause a partially cracked bottle to explode.
Thus, having established that the plaintiff's son did not cause the explosion, the rule of evidence, frequently referred to as the doctrine of res ipsa loquitur, becomes applicable to the facts hereof. Our jurisprudence has consistently recognized that a carbonated beverage, when defectively bottled or handled by the manufacturer, is a dangerous instrumentality. Obviously, a person injured by such an explosion cannot reasonably be expected to explain in minute detail the specific act of negligence which caused the explosion. Therefore, when the plaintiff has successfully established his freedom from fault, the burden of proof then shifts to the defendant to demonstrate its freedom from fault in the bottling of the product or in the shipping thereof to the distributor where it is offered to the public for sale and consumption.[1]
Our review of the record convinces us that the defendants have failed to carry the burden of proof referred to hereinabove. It will be recalled that the manufacturer's president conceded that the bottles are often roughly handled in the distribution thereof. The evidence inscribed in the record does not reveal that this particular bottle was cracked when it was filled at the plant, nor can we conclude therefrom that the internal pressure was unsafe or that the bottle was mishandled by the manufacturer in the course of its delivery to the grocer. However, we are convinced that the bottle did explode and that the plaintiff's minor son was not the cause thereof.
We have always appreciated the difficulty encountered by the individual manufacturer of carbonated beverages when he is required to engage in the defense of suits of this nature. However, the preservation of the public safety in the purchase and consumption of food and beverages is of paramount importance. This rationale, to a large extent, was responsible for the creation of the rules of evidence which require the manufacturer thereof to exculpate itself from negligence once the plaintiff has reasonably proven his own lack of fault. It has been observed by many judges who have authored innumerable opinions involving the explosion of bottled carbonated beverages, that experts generally testify that the containers thereof cannot explode, but they do. And the jurisprudence is embellished with descriptions of serious injuries resulting therefrom.
Therefore, to reiterate, our courts have justifiably imposed a more difficult rule of evidence upon the defendants, and the reasoning therefor is that the manufacturer must accept full responsibility resulting from a defective bottle of carbonated beverage which may prove to be dangerous to the public, who, of course, are the purchasers and ultimate consumers of the product.
We have said on many occasions in the past that the final cause of law is the welfare of society, and any pronouncement of the courts which misses this aim cannot permanently justify its existence.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Hudnall v. Travelers Insurance Company, La.App., 148 So.2d 840; Johnson v. Louisiana Coca-Cola Bottling Co., La.App., 63 So.2d 459, and cases cited therein.