195 So.2d 419 (1966)
Cleas LAFLEUR et ux., Plaintiffs-Appellees,
v.
COCA-COLA BOTTLING COMPANY OF LAKE CHARLES, INC., et al., Defendants-Appellants.
No. 1860.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
On Rehearing February 15, 1967.
Writ Refused March 31, 1967.
*420 Dubuission & Dubuission, by James Guglielmo, Opelousas, for defendants-appellants.
Louis Dischler, Jr., of Guillory, Guillory & Guillory, Eunice, for plaintiffs-appellees.
Before TATE, FRUGÉ and SAVOY, JJ.
*421 TATE, Judge.
Mrs. Cleas Lafleur had just bought a carton of bottled-drinks when one of the bottles exploded. Her leg was cut deeply. She and her husband sue the bottling company and its liability insurer for damages and medical expenses resulting from this injury. The defendants appeal from an adverse judgment awarding Mrs. Lafleur $3,000 general damages for her personal injuries and her husband $646.36 for medical expenses caused or to be incurred by reason of these injuries.
The defendants-appellants chiefly contend that the trial court erred in applying the doctrine of res ipsa loquitur to the facts of this case. As a result of that application, the defendants were held liable upon their failure to negate the bottling company's fault as the cause of the explosion. Additionally, the defendants contend that the general damages awarded were excessive and that the trial court abused its discretion in refusing a request for further medical examination of the injured plaintiff wife.
Liability.
Upon proof that a bottle has not been improperly handled after it left the possession of the bottling company, a plaintiff injured by the bottle's explosion has made out a prima facie case of negligence against the bottler. The reason for this is that it must be assumed that a bottle will not explode when properly handled unless there is some defect in the bottle or some improper charging or mixture of the contents. Ortego v. Nehi Bottling Company, 199 La. 599, 6 So.2d 677; Naquin v. Baton Rouge Coca-Cola Bottling Co., La.App. 1 Cir., 182 So.2d 691, certiorari denied; Gabriel v. Royal Products Div., La.App. 4 Cir., 159 So.2d 384; Bonura v. Barq's Beverages of Baton Rouge, La.App. 1 Cir., 135 So.2d 338.
In the present case, the evidence shows that the defendant supplied a Eunice retailer with all Coca-Cola sold by him, that Mrs. Lafleur purchased a carton of king-sized Coca-Colas, and that as she was standing at the door after the purchase one of the bottles exploded for unknown cause. The evidence positively negates any mishandling or knocking on her part as a possible cause of the explosion. The evidence also indicates that the carton was removed from the rack and handed to her without any mishandling. Despite this, for unknown cause the bottle suddenly exploded, some of the bottle cutting Mrs. Lafleur's right leg deeply.
With considerable force counsel for the defendants-appellants suggests that the plaintiffs have not produced any proof ruling out possible mishandling of the particular bottle which exploded from the time it was delivered by the bottler up until the time of the explosion. Counsel points out, for instance, that the particular bottle which exploded is not identified as having been delivered in any particular semiweekly delivery, nor is there evidence that there was no mishandling by any of the many other grocery store customers visiting the premises while the carton was stacked for retail sale.
We confess that we would have preferred that the plaintiffs had queried the store owner and his co-worker son to receive the inevitable answer that they had not tampered with or mishandled the bottle, nor had any of their customers to their knowledge. Nevertheless, as we appreciate the decisions cited, a bottler is required to sell carbonated beverages which will not explode under normal handling. Thus, handling by other customers between delivery to the retailer and the explosion does not prevent the application of res ipsa loquitur against the bottler, see Bonura v. Barq's Beverage of Baton Rouge, La.App., 135 So.2d 338, nor does loading and reloading by the retailer, Johnson v. Louisiana Coca-Cola Bottling Co., La.App. Orl., 63 So.2d 459.
*422 Under the jurisprudence, therefore, for res ipsa loquitur to apply a person injured by an exploding bottle is not required to trace the history of that particular bottle from the moment it was delivered to the retailer until it explodes. It is sufficient that the injured person prove that he himself was free from fault and that no blow or dropping by him or by some third person caused the bottle to explode while it was being delivered to him from the retail display rack or afterwards; in short, it is sufficient for him to prove only that the bottle exploded from apparently unknown cause while or after being normally handled in an ordinary retail transaction.
We conclude that the trial court correctly held the defendant bottler and its insurer are liable for the plaintiff customer's injuries upon their failure to rebut the prima facie case of negligence arising by reason of the unexplained explosion of the bottled beverage manufactured by the bottler.
Quantum.
The defendants-appellants attack as excessive the trial court's award of $3,000 general damages for Mrs. Lafleur's personal injuries.
The accident occurred on May 4, 1964. As a result of the explosion, Mrs. Lafleur suffered a deep laceration of the right leg above the ankle, which required a tourniquet and suturing. After two weeks of bed rest, the initial attending physician released her on May 18th, with the observation that due to complaints of pain there was a possibility of some glass still remaining in the cut.
She reported the following day to a Dr. Landreneau, a general surgeon, who found her suffering with acute swelling and inflammation of the veins. He diagnosed the cause as an infection (superficial thrombophlebitis) in the veins of the right calf, requiring drugs and bed rest for a week before it was brought under control. However, she continued under Dr. Landreneau's care until November 30, 1964. During this period she suffered two further inflammatory swellings (an acute bursitis) in the area of the laceration. These attacks lasted respectively one and two weeks, during which she suffered acute pain. The doctor felt these attacks to be related to the inflammation. By the time of release on November 30th, the objective symptoms were almost imperceptible. The attending surgeon felt that there was a permanent residual because Mrs. Lafleur was now afflicted with a chronic bursitis aggravated in the right ankle due to the two acute attacks resulting from the traumacaused infection.
Dr. Landreneau examined Mrs. Lafleur again on September 1, 1965, ten months later. This was a week before the trial. His final diagnosis was that the persistence of Mrs. Lafleur's continued complaints of pain and limitation of activity was due to a small piece of glass being retained in the wound, although not ascertainable by X-ray.
This specialist based this final diagnosis upon a consideration of Mrs. Lafleur's entire history while under his treatment, his acceptance as genuine of her complaints of pain, and his feeling that a former hardening (induration) near the laceration had ripened into a tiny nodule probably embodying a foreign body (glass). He felt this caused the patient a twenty-five per cent disability of the ankle, taking into consideration the pain and also the increased chronic bursitis and increased susceptibility to attacks of acute bursitis. This, he felt, could be greatly lessened by comparatively minor surgery excising the nodule. However, he felt there would be some permanent residual in increased susceptibility to pain and bursitis.
The trial court essentially accepted Dr. Landreneau's testimony in finding the plaintiff entitled to the award of $3,000 for the injuries, in recurrent spells acutely painful over a period of six months with as residual a minor disability of the ankle *423 to follow minor surgery to remove a piece of glass about eighteen months after the accident. We find no error in the court's so doing, based upon the frequent and progressive observation and opportunity for diagnosis by this physician over his extended period of treatment. Further, we do not find the award for these injuries to be an abuse of the much discretion entrusted in the trial court in evaluating general damages. LSA-Civil Code Article 1934(3); Ballard v. National Indemnity Co., 246 La. 963, 169 So.2d 64. See O'Pry v. City of Opelousas, La.App. 3 Cir., 124 So.2d 333 ($3,000, badly sprained ankle persisting eight months, insignificant residual thereafter).
In contending that this award is insufficient, the defendants-appellants rely upon the testimony of Dr. Comeaux, another general surgeon. Dr. Comeaux examined Mrs. Lafleur on December 1, 1964, after her objective symptoms and acute disabilities had subsided, and again on September 8, 1965, immediately prior to the trial. Partly because he allowed absolutely no weight to her subjective complaints of pain, he stated he found no residual from the accident. He did not find the tiny nodule discovered a week before by Dr. Landreneau on the side of a former induration (hardening) of the tissue.
Due to Dr. Landreneau's far more extended opportunity to evaluate the authenticity of Mrs. Lafleur's complaints and to arrive at a diagnosis, as well as the trial court's own favorable evaluation of Mrs. Lafleur's testimony of residual pain (corroborated by substantial lay testimony), we are unable to hold that the trial court erred by accepting Dr. Landreneau's testimony instead of Dr. Comeaux's.
As to the suggestion by the defendants-appellants that the trial court abused its discretion in failing to appoint yet another physician to conduct a further medical examination, see LSA-CCP Art. 1943, we find no abuse of its discretion. As the Louisiana Second Circuit stated in rejecting very similar contentions, Woods v. Grain Dealers Mutual Ins. Co., La.App. 2 Cir., 159 So.2d 410, 413, we will not hold that the trial court abused its discretion because all of the circumstances of this particular case, considered together, do "not indicate additional expert testimony would be materially helpful to the court." 159 So.2d 413.
Decree.
The judgment is therefore affirmed at the cost of the defendants-appellants.
Affirmed.

On Rehearing
En Banc.
SAVOY, Judge.
Rehearing was granted because of the forceful contentions of error by defendants-appellants.
On reconsideration of the record, we find that there is sufficient evidence to show that the carton of King-size Cokes was placed in the Coke rack by the defendant bottler and that it had not been dropped while in the possession of the storekeeper. We conclude that this is sufficient to show that the carton was not tampered with to the knowledge of the storekeeper while in his possession.
The clerk took the carton from the display case and handed it to the customer. The bottle exploded without any mishandling after it was given to the customer.
We think there was sufficient showing made by the plaintiff for the application of the rule of res ipsa loquitur, so as to place upon the defendant bottler the burden of proving its freedom from negligence in the manufacture or bottling of the beverage.
Having so found, we prefer to rest our holding of liability upon this basis instead *424 of for the reasons assigned in our original opinion.
We granted a rehearing in the instant case primarily because we were concerned with the refusal by the trial judge to appoint a physician of his choice to examine plaintiff, Mrs. Cleas Lafleur, pursuant to a written application by counsel for defendants. The application by defendants was made on April 19, 1965. On May 21, 1965, the trial judge denied the application, and the case was tried on September 8, 1965.
The record reveals that plaintiff, Mrs. Cleas Lafleur, was examined by Dr. R. E. Landreneau, a general surgeon. His opinion was that she suffered a 25% permanent disability to the right ankle, and he was also of the further opinion that a former hardening near the laceration had ripened into a tiny nodule.
On the other hand, defendants had plaintiff examined by Dr. Walter Comeaux, another general surgeon, who was of the opinion that plaintiff suffered no residual disability from the accident. Also, he did not find the nodule that was found by Dr. Landreneau.
In view of the hopeless conflict between the two physicians, this Court is of the opinion that justice will be served by remanding this case to the trial court, with instructions to the trial judge to appoint a physician of his choice to examine plaintiff, Mrs. Cleas Lefleur, and to notify counsel for all parties of his choice of physicians, and to fix a date for said examination and take evidence as to the opinion of said physician, and then to render such judgment as to quantum as is appropriate on the basis of the entire record.
For the reasons assigned the case is remanded for the purposes expressed herein. Costs of this suit to await final determination thereof.
Remanded.
FRUGE, J., dissents for reasons originally assigned in first opinion of the Court.
TATE, Judge (concurring).
The writer yields to his brethren of the majority, although he feels its ruling has unwisely limited the discretion of the trial court in ordering or refusing to order further medical examinations.
It is apparent to me that the trial court accepted Dr. Landreneau's testimony because of his far more extended opportunity to evaluate the authenticity of Mrs. Lafleur's complaints, as compared to that of any number of specialists who might see her for one or two or three examinations. The question is whether there is some tiny fragment of glass still in Mrs. Lafleur's foot, something that actually cannot be verified objectively (although Dr. Landreneau felt that an almost imperceptible nodule did indicate its presence); whether there is, essentially depends on the truthfulness or not of Mrs. Lafleur's complaints of residual pain.
Although the trial court did not articulate its reasons, I feel confident from its actions that it felt no further medical examination was necessary. Whether or not ten specialists who examined her once testified against Mrs. Lafleur, the trial court was apparently convinced that she did suffer pain and that, if so, under the testimony of the attending physician, the cause was a small fragment of glass embodied in Mrs. Lafleur's flesh.
On our original hearing, I therefore recommended no disturbance on appeal of the trial court's discretion in denying further medical examination as prayed for by the defendants under LSA-C.C.P. Art. 1493.
It is to be remembered that the defendants were afforded the opportunity to have the plaintiff examined by a specialist of their choice (Dr. Comeaux), without apparent restriction as to the number of examinations. Their desire to have yet a third physician examine the plaintiff is of course understandable; but the body of a person in litigation is not a commodity to *425 be lightly turned over to an adversary simply to satisfy the modern-day "numbers" game of testifying specialists.
It is true that the trial court should order a physical examination of the plaintiff in a personal injury action whenever it fairly appears that the ends of justice require a more certain ascertainment of facts which may be fully elucidated only by such an examination. 23 Am.Jur.2d Depositions and Discovery, Section 215. However, medical examinations under a statute permitting the trial court to order them "for good cause shown", LSA-C.C.P. Art. 1493, are for purposes of discovery and not to settle conflicts between medical witnesses, Id. at Section 210, with the number being restricted to the minimum necessary considering the party's right to privacy and the court's need for accurate information, Id. at Section 223. Thus, it is within the discretion of the trial court to deny medical examinations which are merely to obtain cumulative evidence or which would be useless or inconclusive. Id. at Section 215.
Under these standards, I personally feel that the trial court did not abuse its discretion in denying further medical examination when two other specialists and one general practitioner had already examined the injured plaintiff, and where the major reason for accepting as determinative a medical diagnosis of residual disability, despite the present lack of objective symptoms, was great familiarity with the patient's condition through intensive treatment during earlier stages. In Woods v. Grain Dealers Mutual Insurance Co., La. App. 2 Cir., 159 So.2d 410, 413, the trial court's discretion in refusing to order further examination was upheld for similar reasons. The court concluded that all the circumstances considered together did "not indicate additional expert testimony would be materially helpful to the court." 159 So.2d 413.
However, I will defer to the considered judgment of the majority that the interests of justice will best be served by a remand for further medical examination.