DOMENGEAUX, Judge,
dissenting.
The majority takes the' position that there was no reasonable evidentiary basis to support the trial judge’s factual finding that Dugas had not undertaken to open the bottle when the explosion occurred. I disagree and respectfully dissent from the majority view which, in my opinion, has violated the principle of appellate factual review enunciated in Canter v. Koehring Company, 283 So.2d 716 (La.1973).
This principle of appellate review was stated by Justice Tate in Canter as follows:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the *1059 proper allocation of trial and appellate functions between the respective courts.”
In my opinion, the inference drawn by the trial judge that Dugas had not begun to apply any pressure to the bottle and that, therefore, he did not mishandle it when the explosion occurred, was at least as reasonable as the inference drawn by the majority that Dugas had negligently begun opening the bottle with the plumber’s basin wrench at the time of the explosion. There was no direct evidence one way or the other; however a review of the facts contained in the record taken as a whole clearly gave rise to circumstantial evidence which reasonably supported the trial judge’s conclusion. I will attempt to set forth those aspects of the record which I feel are germane.
The bottle which exploded was lost and, therefore, was not introduced at trial. However, there was a drawing depicting the appearance of the bottle after the explosion introduced into evidence. The accuracy of the drawing was substantiated by plaintiff’s witnesses. Defendant’s expert witness, a professor of physics, testified that in his opinion the pattern of glass breakage indicated in the picture was inconsistent with that which could be expected from a bottle broken by a plumber’s basin wrench. Although there were several persons in the immediate vicinity of the accident, there were no eye witnesses to the accident other than the plaintiff. Plaintiff’s testimony indicated that, as far as could be recalled, no pressure had been applied to the bottle cap in an attempt to pry it off the bottle. The exact words, quoted by the majority, are:
“Q. Do you know if you had actually begun to open it?
A. I don’t think so. I couldn’t swear to that. I don’t think so, no; as far as I can recall.
[0]n cross-examination:
Q. It would be fair to say, then, that you don’t know, really, the position of the wrench, with respect to the bottle cap, at the time the breakage occurred?
A. Well, in approximately that position. Whether the teeth were on the cap, or not, that I can’t remember.
Q. And you don’t know how much pressure you may or may not have been exerting on the wrench, and on the bottle, at the time the bottle broke?
A. No, I have no way of knowing.”
One of the persons in the immediate vicinity of the accident, Irene Nero, cleaned up the mess. She testified that the cap was on the bottle after the explosion and that it had not been bent or damaged in any way. Another witness, Valerie June Boulet, was emphatic in her testimony that the cap was still on the bottle after the explosion. The majority has interpreted this to mean that Dugas had applied pressure to the glass part of the bottle with the wrench. I feel, however, that this could indicate that Du-gas had applied no pressure to the bottle whatsoever.
Defendant sought to establish by the testimony of its expert, Doctor Riley, that the coke bottle in question could not have exploded in the absence of external pressure being applied to the bottle. This witness testified that a 6V2 ounce Coca-Cola bottle, the same size bottle that caused plaintiff’s injuries, is one of the strongest of all the company’s containers, capable of sustaining internal pressures of 375 pounds per square inch. He also testified that a bottle shaken at 75° F would reach a pressure of less than one hundred pounds per square inch. It would seem that this testimony would make inescapable the conclusion that plaintiff must have broken the bottle while applying pressure to it with the basin wrench. However, in rebuttal, plaintiff called Norman Usie, the salesman-delivery man who regularly serviced Boo Boo’s Lounge. Usie testified that bottles would often burst during normal delivery. He stated that he sometimes heard bottles popping on the delivery truck because of normal road vibrations and the heat of the day. Thus, it could be concluded that the bottle broke for a reason other than the application of the basin wrench.
In summary, I feel that the following reasonable inferences can be drawn from the evidence:
*1060 1. Coke bottles are known to burst on their own accord without the application of external force (testimony of Usie);
2. Plaintiff did not think he had begun to apply pressure to the cap or the bottle with the basin wrench (testimony of plaintiff);
3. Plaintiff, in fact, applied no pressure to the cap or bottle because the cap was still on the bottle after the explosion and was not bent or damaged in any way (testimony of Nero and Boulet);
4. Based upon the drawing of the broken bottle, it was unlikely that the bottle was broken with the basin wrench (testimony of Doctor Riley).
These inferences unquestionably give a reasonable evidentiary basis to the trial judge’s conclusion that plaintiff had not begun to exert any pressure to the bottle when it burst and therefore, did not mishandle it. Under Canter, if there exists a reasonable evidentiary basis, this court should not substitute its factual conclusions for those of the trial judge, even though our conclusions are as reasonable.
The majority places much reliance upon the fact that almost all of plaintiff’s witnesses testified that Dugas “was in the process of opening the bottle when it broke.” I do not attach much significance to these statements because I feel Dugas was in the process of opening the bottle from the moment he picked it up and intended to drink it. I doubt if recovery could be denied had the bottle burst in Dugas’ hand while he was in the storeroom before he had obtained the basin wrench; nevertheless, in my opinion, Dugas would have been in the process of opening the bottle at that time. In short, I do not feel that the unqualified and broad statements made by the witnesses referring to being “in the process of opening the bottle” can be construed to mean that Dugas was applying pressure to the bottle when it burst. I think it equally reasonable to construe the statements to mean that Dugas obtained the bottle and was taking preparatory steps to open it. None of the testimony clearly indicated that pressure had actually been applied to the bottle and this is the crucial element. In fact, all of the witnesses stated that they could not see plaintiff clearly at the time of the explosion. The majority has read too much into these statements.
Finally, the majority quotes the following language from the deposition of Rene Pre-jean:
“Q. Were you present when Elwood was hurt?
A. Yes, sir, I was.
Q. What happened?
A. He was in the process of opening a coke bottle with a lavatory wrench.
* * * * * *
Q. How was he using it? Do you know? How was he using it to open the bottle?
A. Well, I think he was holding the bottle in either his right — I don’t remember what hand he was holding the bottle in, but he had the wrench on top and I would imagine he was trying to pull the cap off.
Q. Had he touched the bottle when it broke? Had he touched it with the wrench when it broke?
A. I believe he had, yes.
Q. In other words, it broke while he was in the act of pulling the cap off?
A. Right.
Q. The best you can recall is that he had the looped end of the wrench which is this top part here, hooked over the cap and he was pulling on it?
A. To me that’s how it was done, yes. It happened real quick, you know, I was just looking at him one minute and the next minute he was full of blood.”
In addition to Prejean’s deposition the trial court had the benefit of Prejean’s testimony at trial. It was apparent from his testimony at trial that Prejean was not watching plaintiff closely at the moment of the explosion. Furthermore the deposition, which indicated that plaintiff was actually pulling off the cap when the bottle exploded, is as uncertain as plaintiff’s testimony, *1061 which indicated that no pressure was yet applied to pull the cap off. Obviously the trial judge attached more significance to his testimony in court than his deposition. This was within his discretion. Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir. 1971).
Having concluded that there was sufficient evidence upon which the conclusion could be reached that plaintiff had not exerted any pressure on the bottle and, therefore, did not mishandle it, I would go on to hold that res ipsa loquitur is applicable to this case.
Defendant argues that res ipsa loquitur should not apply because plaintiff failed to negate all other possible causes of his injury other than defendant’s negligence. Defendant further maintains that the doctrine does not apply where there is direct evidence of negligence which caused the injuries involved on the part of someone other than defendant and where the facts are such that one can reasonably infer that the accident was due to a cause other than defendant’s negligence.
In this regard I quote the language of Justice Tate in the opinion of Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, 636 (1972):
“[T]he circumstantial evidence requisite in civil negligence cases need not negate all other possible causes of injury, as the opinions of the previous courts seemed to hold. It suffices if the circumstantial proof excludes other reasonable hypotheses only with a fair amount of certainty, so that it be more probable than not that the harm was caused by the tortious conduct of the defendant. .
In this respect, the principle of ‘res ipsa loquitur’ (the thing speaks for itself) sometimes comes into play as a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be the more probable cause of injury in the absence of other as-plausible explanation by witnesses found credible. Pilie v. National Food Stores of Louisiana, 245 La. 276, 158 So.2d 162 (1963); Larkin v. State Farm Mutual Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (1957); Malone, Res Ipsa Loquitur and Proof by Inference, 4 La.L. Rev. 70 (1941); Comment, 25 La.L.Rev. 748 (1965).” [Footnote omitted]
I feel that the circumstantial proof in this ease shows that it was more probable than not that plaintiff’s injuries were caused by the tortious conduct of the defendant. As I have previously stated, the trial judge was not erroneous in finding that plaintiff did not mishandle the bottle in question. It was established at trial that no one other than the defendant or its agent handled the Coca-Colas delivered to Boo Boo’s Lounge. If there was no mishandling of the bottle by plaintiff and no one but the defendant handled the bottle prior to plaintiff’s obtaining it, it follows that there could be no other “as-plausible” explanation for plaintiff’s injuries.
In any event, after reviewing the cases on bottle explosions, I am inclined to follow the long line of decisions which have applied res ipsa loquitur to analogous situations. E. g., Centineo v. Anheuser-Busch, Inc., 276 So.2d 352 (La.App. 4th Cir. 1973); Lafleur v. Coca-Cola Bottling Company of Lake Charles, Inc., 195 So.2d 419 (La.App. 3rd Cir. 1966), writ refused 250 La. 488, 196 So.2d 802 (1967); Naquin v. Baton Rouge Coca-Cola Bottling Company, 182 So.2d 691 (La.App. 1st Cir. 1965), writ refused 248 La. 1100, 184 So.2d 24 (1966); Gabriel v. Royal Products Division of Washington Products, Inc., 159 So.2d 384 (La.App. 4th Cir. 1964); Hudnall v. Travelers Insurance Company, 148 So.2d 840 (La.App. 4th Cir. 1963), writ refused 244 La. 123, 150 So.2d 586 (1963). Plaintiff herein has made out a prima facie case of negligence against the defendant. Defendant sought to rebut this inference of negligence with Doctor Riley, who merely testified as to the general strength of Coca Cola bottles and the various ways that Coca Cola bottles would break. Defendant has failed in his rebuttal.
Having concluded that defendant was liable to plaintiff for his injuries, I would affirm the trial judge’s determination of damages, which defendant argues was excessive.
*1062 The trial judge broke down the award as follows:
Doctor’s expenses .$ 291.00
Hospital expenses.$ 493.00
Expenses of depositions .$ 97.00
Future medical expenses.$ 1,500.00
Lost earnings (past).$ 1,750.00
General damages.$ 6,000.00
Total .$10,131.00
Plaintiff had a laceration on the left hand starting at the ulnar side of the little finger and extending to the radial side of the ring finger. Both the deep and superficial tendons of the little finger were cut as well as the tendon sheath of the ring finger. He underwent emergency surgery in which the deep tendon of the little finger was sutured, and the tendon sheath of the ring finger was cut away in order to allow unhampered movement of the tendon of the ring finger.
In addition to the tendon damage, plaintiff now experiences some loss of sensation in both fingers, which indicates some permanent damage to the sensory system. This is substantiated by Doctor Riordan, an orthopedic surgeon, and Doctor Leblanc, a thoracic surgeon. Doctor Riordan stated that plaintiff will have to undergo further surgery, hospitalization, and follow-up treatment. He estimated that this would cost $1,500.00.
Doctor Riordan testified that the loss of sensation in the little finger and ring finger was permanent and would result in a ten percent loss of function of the left hand as a whole. Furthermore, the doctor stated that plaintiff’s little finger could only reach about 70 percent of its normal range of motion. The evidence in the record indicates that plaintiff is now working at his normal occupation. Considering all facets of plaintiff’s award of $6,000.00 for general damages, I find that it is within the limits qf discretion allowable to the trial court. An appellate court should not disturb an award made by a trial court unless it is revealed clearly in the record that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Considering the award for medical expenses and the expense of depositions, all of which have already been incurred, I find them to be reasonable and supported by bills introduced into evidence.
The award of $1,500.00 for future medical expenses is substantiated by the testimony of Doctor Riordan.
Plaintiff introduced into evidence his income tax returns for the two years preceding the accident. Those returns indicate average annual earnings of approximately $8,500.00 which yield average weekly earnings of approximately $175.00. Since plaintiff lost ten weeks of work the award of $1,750.00 for lost earnings is reasonable.
For the above reasons I would affirm the judgment of the District Court.
Accordingly, I respectfully dissent.